[No. 22291. Department Two. September 11, 1930.]

JOHN H. ROCHE, *Respondent,* v. MAUDE S. McDONALD, *as Executrix, Appellant.*[1]

[1]Reported in 291 Pac. 476.

*Graves, Kizer & Graves,* for appellant.
*R. L. Edmiston* and *John H. Roche,* for respondent.

FULLERTON, J.—D. K. McDonald died testate in the county of Spokane on May 12, 1928. On October 19, 1928, letters testamentary were issued to his widow, Maude S. McDonald, as the executrix of his estate. In November, 1928, the respondent, John H. Roche, presented to the executrix a claim against the estate, founded upon a judgment entered against McDonald in his lifetime in the circuit court of the state of Oregon for the county of Marion, for the sum of $18,-298.98. The executrix rejected the claim, whereupon the respondent brought the present action to establish the judgment as a valid claim against her testator's

estate. Judgment went in favor of the respondent, and it is from this judgment that the present appeal is prosecuted.

To an understanding of the controversy, something of the history of the transaction out of which it arises must be stated. On June 24, 1918, one L. H. Dart recovered a judgment in the superior court for Spokane county against D. K. McDonald and his wife, the present executrix, for the sum of $12,750, on a cause of action sounding in tort; the contention being that the McDonalds had, by fraud and deceit, induced Dart to purchase certain worthless stock in a corporation. The judgment ran against them separately, and the wife appealed from the judgment in so far as it affected her in her individual capacity, and this court, on the appeal, reversed and set aside the judgment as to her. *Dart v. McDonald,* 107 Wash. 537, 182 Pac. 628.

Dart was unable to enforce the judgment as against the remaining judgment debtor, and on February 27, 1924, assigned the judgment to respondent Roche. McDonald was, at that time, temporarily in the state of Oregon, engaged in the promotion of some real estate enterprise. Roche instituted an action against him in that state and obtained the judgment hereinbefore mentioned. The judgment was entered on personal service had upon McDonald, and after he had appeared in the action and demurred to the complaint; he having failed to plead further after his demurrer was overruled.

McDonald returned to this state while the action was pending in the Oregon court, and shortly after the judgment had been entered therein, Roche brought an action in this state against him, basing his cause of action on the Oregon judgment. McDonald defended against the action and was successful in the trial court, and successful in this court on an appeal

from the judgment. *Roche v. McDonald,* 136 Wash. 322, 239 Pac. 1015. On *certiorari* to the supreme court of the United States, however, that court reversed the judgment of this court, holding that we did not give full faith and credit to the judgment of the Oregon court, and remanded the cause to this court for further proceedings not inconsistent with its opinion. *Roche v. McDonald,* 275 U. S. 449. When the mandate of the supreme court of the United States reached this court, we, in obedience to the mandate, reversed the judgment of the trial court and remanded the cause to that court for further proceedings.

After the remittitur of this court reached the trial court, McDonald amended his answer to the original complaint by setting up new and additional defenses, but before the issues were finally joined in the cause, McDonald died.

The pending action, while it was suspended by the death of McDonald, was not abated or barred by his death. Rem. Comp. Stat., § 193. It was the privilege of the plaintiff to substitute the executrix of his estate as defendant in his stead and proceed with the further prosecution of the action. He did not, however, avail himself of this remedy. On the contrary, after the death of McDonald, he took no further notice of the pending action, but presented the judgment, which furnished the foundation of the pending action, to the executor as a claim against her testator's estate, and on its rejection, began an independent action to enforce its allowance.

In his complaint, the respondent set out the rendition of the judgment on which he relied for a recovery, set out its presentation to the executrix as a claim against her testator's estate, and its rejection by the executrix, making no reference to the pending action.

The executrix answered, and, after making certain admissions and denials, set up, as a first affirmative defense, the facts giving rise to the judgment sued upon, showing that the judgment rendered in this state on which the judgment in the Oregon court was founded originated in tort, and alleged that it did not survive the death of McDonald. For a second affirmative defense, she alleged that the plaintiff, in bringing an action in the state of Oregon, was guilty of a fraud upon the laws of this state, in that the sole purpose of the action was to circumvent its statutes which limit the life of a judgment rendered by any of its courts to six years. Issue was taken on the allegations of the affirmative answers, and a trial was had with the result above stated.

On her appeal, the executrix makes four principal contentions, which can best be stated in the language of her counsel. They are the following:

"(1) An action against McDonald on the Oregon judgment was pending in the superior court for Spokane county at the time of his death. That being the case, an independent claim upon that judgment could not be presented to the executrix, and on its rejection an independent action be brought thereon. Under § 1486, Rem. Comp. Stat., the claim in suit could only be enforced by substituting McDonald's executrix as defendant in the action pending against him at the time of his death.

"(2) The cause of action upon which the Oregon judgment rests is in tort, which would not survive D. K. McDonald's death. The judgment is not a new and independent obligation, but the old obligation in a new form, and so the judgment no more survives as a claim against the estate than would the cause of action had it not been reduced to judgment.

"(3) Roche and McDonald were both citizens and residents of Washington, and had been for many years prior to the recovery of the Oregon judgment. Every citizen of a state owes obedience to and is entitled to

the protection of its laws. Roche's conduct in suing and recovering judgment on the Washington judgment in Oregon, and in thereafter demanding enforcement of the Oregon judgment in Washington, was an evasion of the Washington statute which limits the life of a judgment to six years, to the injury of a fellow citizen, who was entitled to the protection of that statute. A court of equity will not, under such circumstances, permit enforcement of the judgment.

"(4) Roche's claim is stale. Doubtless if the Oregon judgment be given effect, there is no legal bar to the claim. But the doctrine of stale claim is applicable to such a case as this, and Roche's claim, which had its origin more than eleven years ago, much more than the longest statutory limitation period permitted by the Washington law, is undoubtedly stale."

The first of the objections, as noted in the objection itself, is founded upon the statutes. As hereinbefore stated, an action in this state does not abate by the death of the defendant if the cause of action survives, but may be continued against his representatives or successors in interest, if application be made therefor within one year from the time of the death. Rem. Comp. Stat., § 193.

The probate code in force prior to the adoption of the new probate code of 1917, added to the general statute cited the requirement that a claim in suit at the time of the death of a defendant should be presented to the executor or administrator as an ordinary claim was required to be presented, and further provided that no recovery could be had in the pending action unless proof be made of the presentment. Code of 1881, § 1476; Ballinger's Ann. Codes and Statutes, § 6237. The code of 1917 (Laws of 1917, p. 642), however, made a somewhat radical change with respect to actions pending. While it provides (Rem. Comp. Stat., § 1477) that all claims against an estate shall be presented to the executor or administrator,

and provides (Ib. § 1484) that "no holder of any claim against an estate shall maintain an action thereon, unless the claim shall have been first presented as herein provided," it further provides (Ib. § 1486):

"If any action be pending against the testator or intestate at the time of his death, the plaintiff shall within ninety days after first publication of notice to creditors, serve on the executor or administrator a motion to have such executor or administrator, as such, substituted as defendant in such action, and, upon the hearing of such motion, such executor or administrator shall be so substituted, unless, at or prior to such hearing, the claim of plaintiff, together with costs, be allowed by the executor or administrator and the court. After the substitution of such executor or administrator, the court shall proceed to hear and determine the action as in other civil cases."

It is the argument of the executrix that this statute provides an exclusive remedy in situations such as is here presented; that the remedy of the common law is abolished, and that now a claimant whose claim is in suit at the time of the death of the defendant may not present his claim to the defendant's executor and sue upon the claim, if rejected, in an independent action, but must, in such a case, substitute the executor as defendant in the pending cause, and continue its prosecution in that action.

But we are not able to follow the appellant. It is true that, at common law, the death of a sole defendant abated the action, and this whether the action was or was not founded on a liability which would survive the death. In the case of the death of the defendant pending the action, the plaintiff was required to begin anew against the personal representatives or successors in interest of the deceased defendant. He could not, under that procedure, substitute the representative or the successors in interest as parties de-

fendant as defendants in the action. No doubt, the statute allowing a substitution was intended to relieve from the inconveniences and hardships that sometimes followed from the common law rule, but its counterpart is found in the English statutes, in the statutes of the United States, and in the statutes of every state of the Union, yet we are not advised that it has ever been held that it superseded the common law rule.

It is true, furthermore, that the probate statute has added an element necessary to be pursued in order to maintain a certain class of action where substitution is permitted. Whatever the rule may be where the action against the defendant was merely to establish a right, such as to determine a disputed title to property, quiet the title to property, and the like, the statute, in all actions where a money judgment is sought against the defendant, makes it a condition precedent to the continuance of the action against the personal representatives of the defendant, that a claim be presented to his executor or administrator. But we cannot think that this necessarily means that there must be, in all cases, a substitution and a continuance of the pending action. In so far as the interests of the executor or administrator are concerned, the form of procedure is of no material consequence. Whether the substitution is made and the pending action is continued after the rejection of the claim, or whether a new and independent action is instituted on the claim, the material rights of the executor or administrator are in no way affected. The executor or administrator is free to interpose any and every defense that may exist to the cause of action.

That the rule contended for by the appellant will sometimes work an inconvenience and cause a multiplicity of suits, is illustrated by the present instance. The respondent had another judgment against Mc-

Donald arising out of causes originating subsequent to the judgment in suit at the time of his death. This judgment he also presented to the executrix along with the judgment in suit, and it also was rejected by the executrix. To enforce this part of the claim, would seem, of necessity, to require an independent action. It was not a matter in litigation in the pending action, and would not be brought therein by the mere substitution of the executrix for the original defendant. Possibly, with the consent of the executrix, it could have been brought therein by re-casting the issues, but this would hardly have been permissible without such consent. Notwithstanding, therefore, that the wording of the statute may be somewhat imperative, we cannot conclude that it prohibits the procedure adopted in this instance.

The second objection is succinctly stated in the quotation we have made from the briefs of the appellant's counsel. It is the rule, as therein assumed, that a pending action, founded on the tort of a defendant, dies with the death of the defendant. We so held in an action involving the very transaction which gave rise to the original judgment rendered in this state against McDonald. *State ex rel. Baeder v. Blake,* 107 Wash. 294, 181 Pac. 685. But the situation here presents a different question. In this instance, the tort of McDonald was merged into a judgment of the state court; that judgment was sued upon in a court of the state of Oregon and a judgment obtained thereon in that court; and the present action is based on the judgment of the Oregon court. The more narrow question is, therefore, whether the court will now go behind the judgment of the court of Oregon, inquire into the nature of the cause of action upon which it is founded, and, if it finds that the cause of action originated in tort, will hold that the death of the defendant

committing the tort constitutes a bar to a recovery on the judgment in this state.

The appellant has called to our attention many cases which are thought to sustain the contention, some of which are from the supreme court of the United States: *Chase v. Curtis,* 113 U. S. 452; *Wisconsin v. Pelican Ins. Co.,* 127 U. S. 265; *Huntington v. Attrill,* 146 U. S. 657. The first two of these cases were judgments founded on liabilities in the nature of penalties, and the court, for reasons satisfactory to itself, held that they were not such judgments as the courts of another state were bound to give full faith and credit as required by the Federal constitution. In the third of the cases, the same contention was made, and the court of the state where the judgment was sought to be enforced, followed the rule announced in the Federal cases. The supreme court, however, held that the court had mistaken the nature of the judgment, that the judgment, although founded on the wrong of the defendant, was not founded on "a penal law in the international sense," and that full faith and credit must be given to it in other states. The court, in the course of its opinion, after quoting the applicable provisions of the constitution and the act of Congress enacted thereunder, used this language:

"These provisions of the constitution and laws of the United States are necessarily to be read in the light of some established principles, which they were not intended to overthrow. They give no effect to judgments of a court which had no jurisdiction of the subject-matter or of the parties: *D'Arcy v. Ketchum,* 11 How. 165; *Thompson v. Whitman,* 18 Wall. 457. And they confer no new jurisdiction on the courts of any state; and therefore do not authorize them to take jurisdiction of a suit or prosecution of such a penal nature, that it cannot, on settled rules of public and international law, be entertained by the judiciary of any other State than that in which the penalty was

incurred. *Wisconsin v. Pelican Ins. Co.,* 127 U. S. 265. Nor do these provisions put the judgments of other states upon the footing of domestic judgments, to be enforced by execution; but they leave the manner in which they may be enforced to the law of the state in which they are sued on, pleaded, or offered in evidence. *McElmoyle v. Cohen,* 13 Pet. 312, 325. But when duly pleaded and proved in a court of that state, they have the effect of being not merely *prima facie* evidence, but conclusive proof, of the rights thereby adjudicated; and a refusal to give them the force and effect, in this respect, which they had in the state in which they were rendered, denies to the party a right secured to him by the Constitution and laws of the United States. *Christmas v. Russell,* 5 Wall. 290; *Green v. Van Buskirk,* 5 Wall. 307, and 7 Wall. 139; *Insurance Co. v. Harris,* 97 U. S. 331, 336; *Crescent City Co. v. Butchers' Union,* 120 U. S. 141, 146, 147; *Carpenter v. Strange,* 141 U. S. 87.''

As we read the cases, they do not announce the broad rule for which the appellant contends. The court, in its opinions, was careful to confine the point decided to the facts of the particular case. They, at least, do not announce the principle that a judgment founded on tort dies with the death of the judgment debtor.

The question is, moreover, not entirely new in this state. In *Wright v. Northern Pac. R. Co.,* 45 Wash. 432, 88 Pac. 832, one Sarah May Wright, and another, as plaintiffs, brought an action to recover damages against the railway company caused by the alleged negligence of the railway company. A trial of the action resulted in a judgment in favor of the plaintiffs. On an appeal from the judgment to this court, the judgment was reversed and a new trial ordered. The case was again tried after its remand by this court, resulting in a verdict and judgment in favor of the plaintiffs. On motion of the defendant, the judgment

was set aside by the trial court, and a new trial ordered. The plaintiffs appealed from the order, and, pending the appeal, the plaintiff, Sarah May Wright, died. An administrator was appointed for her estate, and a motion was made in this court to substitute the administrator for the deceased plaintiff. The substitution was opposed, but granted by the court. Discussing the question, the court, Judge Dunbar writing the opinion, used this language:

"Defendant objects to the substitution on the ground that the said plaintiff having died, the action as to her is abated, and that the action cannot be continued for the benefit of the estate and of the personal representatives. This objection, we think, is not tenable. There is still a judgment existing in favor of the estate. It is the judgment which is the subject of the controversy involved in the appeal. The very object of the appeal is to substantiate, by a reversal in the appellate court, the validity of the judgment, and to obtain the benefit of the judgment which had been rendered, and this will be the result if the appeal is successful. It is not as if a judgment had never been obtained. It is simply held in abeyance, and may or may not become effective to the appellant, that question depending entirely upon the determination of the other question in this court, as to whether the court erred in granting a new trial, thereby depriving the appellant, for the time being, of the benefit of the judgment; and the effect of the appeal is to suspend the operation of the order granting a new trial, and to keep alive the judgment until the appeal is determined. It is not a question of whether a cause of action survives, which is a question largely discussed by the respondent, for the cause of action has merged in the judgment, and the validity of the judgment is the question at issue."

And again:

"The court, it seems to us, confused a cause of action with property which a judgment comprises, and forgot that the cause of action being merged in the

judgment, the judgment becomes a higher and superior sort of security, a finality, so far as the cause of action is concerned, and as in this case, so far as the question on appeal is concerned, it does not reach the cause of action at all, but is simply a litigation over the judgment. The overwhelming weight of authority is to the effect that the cause of action is merged in the judgment, and that the judgment is property which descends to the representative of the deceased for the benefit of the estate. There are hundreds of cases which sustain this theory of the law, a few of which are the following: *Crawford v. Chicago etc. R. Co.*, 171 Mo. 68, 66 S. W. 350; *Carr v. Rischer*, 119 N. Y. 117, 23 N. E. 296; *Lewis v. St. Louis etc. R. Co.*, 59 Mo. 495, 21 Am. Rep. 385; *Hart v. Washburn*, 62 Hun. 543; *Kimbrough v. Mitchell*, 38 Tenn. 539; *Coughlin v. District of Columbia*, 106 U. S. 7, 1 Sup. Ct. 37, 27 L. Ed. 74; *Strouse v. Drennan*, 41 Mo. 289; Freeman, Judgments, § 217, and cases cited; 1 Cyc. 79, and cases cited; 20 Am. & Eng. Ency. Law (2d ed.), 599, and cases cited.''

The case presents the converse of the question here, as there it was a plaintiff in the action who died, while here it is the defendant, but the principle involved in each case is the same, and the holding applicable to the one is applicable to the other.

We think, too, that the question is concluded against the appellant by the case of *Roche v. McDonald*, 275 U. S. 449, from the United States supreme court, which reversed our holding that there could be no recovery in this state on the judgment. The decision was rested, it is true, on grounds different from those now urged against the judgment, and the higher court determined only that the particular ground was untenable, but the reasons given for the conclusion they reached, and the argument made in support of the reasons, are, in our opinion, equally applicable to the contention now before us. The court, after stating the facts which gave rise to the judgment in the court

of Oregon and stating the ground upon which we held it insufficient to sustain an action thereon in this state, used this language:

"It is settled by repeated decisions of this court that the full faith and credit clause of the constitution requires that the judgment of a state court which had jurisdiction of the parties and the subject-matter in .suit, shall be given in the courts of every other state the same credit, validity and effect which it has in the state where it was rendered, and be equally conclusive upon the merits; and that only such defenses as would be good to a suit thereon in that state can be relied on in the courts of any other state. *Mills v. Duryee,* 7 Cranch. 481, 484; *Hampton v. McConnel,* 3 Wheat. 234, 235; *D'Arcy v. Ketchum,* 11 How. 165, 175; *Cheever v. Wilson,* 9 Wall. 108, 123; *Hancock National Bank v. Farnum,* 176 U. S. 640, 643; *Tilt v. Kelsey,* 207 U. S. 43, 57; *Converse v. Hamilton,* 224 U. S. 243, 259."

Later on in its opinion, the court cited the case of *Fauntleroy v. Lum,* 210 U. S. 230, a case which distinguished the case of *Wisconsin v. Pelican Ins. Co.,* cited *supra,* and used this further language:

"The Fauntleroy case is directly controlling here. The court of Oregon had jurisdiction of the parties and of the subject-matter of the suit. Its judgment was valid and conclusive in that state. The objection made to enforcement of that judgment in Washington is, in substance, that it must there be denied validity because it contravenes the Washington statute and would have been void if rendered in a court of Washington; that is, in effect, that it was based upon an error of law. It cannot be impeached upon that ground. If McDonald desired to rely upon the Washington statute as a protection from any judgment that would extend the force of the Washington judgment beyond six years from its rendition, he should have set up that statute in the court of Oregon and submitted to that court the question of its construction and effect. And even if this had been done he could not thereafter have impeached the validity of the judgment because of a misapprehension of the Wash-

ington law. In short, the Oregon judgment, being valid and conclusive between the parties in that state, was equally conclusive in the courts of Washington, and under the full faith and credit clause should have been enforced by them.''

McDonald was alive at the time of the rendition of the Oregon judgment, and the ground now urged to defeat the judgment arose after its rendition, but the judgment is valid and binding on its face, and under the rule laid down in the case of *Roche v. McDonald,* we feel that we have no other alternative than to give it full force and effect.

The third ground urged arises out of the cross-complaint in equity interposed as a defense to the action. It was therein charged, as before noted, that the purpose of the plaintiff Roche, in bringing an action on the judgment of this court, was not to enforce its collection in Oregon, but to circumvent and evade the laws of the state of Washington; that the purpose was to keep alive and perpetuate the judgment, which would otherwise have expired by its own limitation within a few months after that time. The trial court held that the evidence submitted was not sufficient to sustain the contention. We are inclined ourselves to accept this view. McDonald, was then engaged in an enterprise in the state of Oregon. He had been within that state pursuing the enterprise for more than a year. Investigation showed that he might possibly derive a profit from the venture, and there was no other way to reach the profit than to convert the judgment of this state into a judgment in the Oregon court. It must be remembered, too, that McDonald had no visible property in this state which could be reached by execution; at least, the judgment had stood of record against him for more than five years, and the vigilance of the judgment creditor could discover no such property. Under these circumstances, the attempt to

reach property in Oregon was not unnatural, and we cannot conclude that the evidence preponderates against the finding of the trial court that he instituted the action in the Oregon court in good faith. Since the proceeding there was in good faith, he is entitled to the advantages he may have derived from it.

The contention that the claim has been lost by laches, we think, is also unfounded. The doctrine of laches is based on the principle that the laws aid the vigilant, not those who sleep upon their rights, and there is no evidence in the record which tends to show that either the original holder of the claim or the present holder has been negligent in their efforts to enforce it.

Our conclusion is that there is no error in the record. The judgment, therefore, will stand affirmed.

MITCHELL, C. J., MAIN, and FRENCH, JJ., concur.