GUILFORD & SANGERVILLE WATER DISTRICT

*vs.*

SANGERVILLE WATER SUPPLY CO. ET ALS.

GUILFORD & SANGERVILLE WATER DISTRICT

*vs.*

GUILFORD WATER COMPANY ET ALS.

Piscataquis.     Opinion April 28, 1931.

*Laughlin & Gurney*,
*John S. Williams*, for plaintiff.
*W. B. & H. N. Skelton*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

DUNN, J.   These two equity cases by the same plaintiff are here on report. In each instance, design is to enforce the conveyance of the plant of a public water service corporation to a water district. Theory and contention in such connection is that the district, having accepted the proposal, or offer, of the utility to sell its property (the proposal being contained in the contract with the town where the utility serves), is ready, able and willing to exercise the right of purchase. Although not a party to the contract, plaintiff district asserts that, at the making thereof, it was, prospectively, and since coming into existence in a subsequent year has actually been, a beneficiary thereunder. Besides the water company, the town, and the trustee of bonds of the company, are parties defendant.

Whether specific performance will lie is, on the report, the question material to issue. If not, the bill is to be dismissed; otherwise, the cause is to be remanded to determine the amount to be paid for the property which plaintiff seeks to acquire.

The cases are unlike on the facts.

The Sangerville Water Supply Company, its case being first in order, is successor to one Charles N. Taylor, a water-works promoter, who, on September 7, 1910, contracted in writing with the incorporated town of Sangerville to construct a sufficient system, and furnish water for fire and other public purposes, and to private users, through pipes and conduits, in that town. In the contract was a provision that the town, or a water district, in the event the Legislature should create such a district, might acquire the water works by purchase, at any time after their installation, at a price equivalent to construction cost, as the contract defined this term, plus fifteen per centum additional.

In relationship to instant inquiry, the Legislature may be said to have created plaintiff water district, by enlarging the area of an already existing district, in the year 1929. P. & S. L., 1929, Chap. 81.

Mr. Taylor, the promoter, never vended water in Sangerville. The defendant utility, although the contract does not appear to have been formally assigned to it, has furnished the water from the beginning. Claim is that such defendant assumed the contract, and that, as a consequence, it is bound to sell its property to the district. The situation is unaffected by legislation.

The bill is not sustainable.

Defendant corporation is engaging in a *quasi* public occupation. Such corporations hold their franchises not only for their stockholders, but also in trust for the public. *Stockton, Attorney General* v. *Central Railroad*, 50 N. J. E., 52; 24 Atl., 964. A public *quasi* corporation may not, without legislative consent, so deal with its property as to incapacitate itself from performing its public duties. Brice on Ultra Vires (2d Am. Ed.) 120; *Brunswick Gas Light Company* v. *United Gas, etc., Company*, 85 Me., 532. The evidence warrants finding that the water company took over the contract, but the proposal to sell the water system went beyond the scope of corporate power. A court of equity will not compel performance of an *ultra vires* agreement. *Phillips Village Corporation* v. *Phillips Water Company*, 104 Me., 103.

The bill must be dismissed.

In the case wherein the Guilford Water Company is a defendant, this, in brief, is what the record shows:

In 1909, P. & S. L., Chap. 226, the Legislature chartered the Guilford Water Company to establish and operate works, and distribute water for municipal and domestic purposes, in the town of Guilford. The charter authorized the water company, after ten years of operation, to convey its works to the town, or to a water district, at a price to be mutually agreed upon, or determined by arbitration.

The charter was accepted, organization effected, a contract entered into, under date of August 10, 1910, to install a water-works plant, and to furnish water for public purposes and private uses.

The contract provided, among other things, that on completion of the water works, or at any time thereafter, the town of Guilford, or a water district, in the event of its creation, should have the right to buy the original works, and all extensions and additions, for fifteen per centum more than cost. The charter of the water company, as before noted, authorized a sale only after ten years. 1909 P. & S. L., *supra.*

The Guilford Water District dates from 1911. It was created to supply water for public and other needs. 1911 P. & S. L., Chap. 201. The legislative act provided for the acquisition by the district of the Guilford Water Company's plant, in accordance with the proposal in the contract between the company and the town of Guilford, but was silent in respect to acquisition by the town.

On accepting the act, as it did in the same year, the district became a *quási* municipal corporation. *Kennebunk, etc., District* v. *Wells,* 128 Me., 256.

Nothing further was done until 1929. The Legislature then amended the Act of 1911. 1929 P. & S. L., Chap. 81. The amendment changed the name of the district from Guilford Water District to Guilford & Sangerville Water District, extended the district boundaries to embrace a part of the territory of the town of Sangerville, repealed the provision respecting sale and purchase under the contract offer, and provided for the acquirement of the plant of the Guilford Water Company, and also that of the Sangerville Water Supply Company, by purchase (without reference to

either proposal or offer) or by exercise of the right of eminent domain. 1929 P. & S. L., *supra*.

On May 12, 1930, the Guilford & Sangerville Water District advised the Guilford Water Company of its desire to buy the property of the company on the terms of the contract offer. To this, the water company did not accede.

The contract offer, or proposal, of 1910, was *ultra vires*. On accepting its charter, the Guilford Water Company became bound to render to the public that service, the performance of which was the inducement of the grant. *New Orleans Gas Company* v. *Louisiana, etc., Company*, 115 U. S., 650, 29 Law ed., 516. The Guilford Company, like the Sangerville Company, could not, without legislative permission, leave itself without facilities to perform its public duties. *Phillips Village Corporation* v. *Phillips Water Company*, supra. Legislative consent, which the Guilford Company had, to sell after ten years, was not a consent to sell at once.

In establishing the Guilford Water District, in 1911, the Legislature, it is true, authorized that district, and it alone, to purchase in accordance with the contract of August 10, 1910. This, however, was nothing but an authorization which, all parties in interest assenting, the district might exercise before the expiration of the original ten-year period which the water company charter named, or might not exercise at all. *Denver Water Company Case*, 229 U. S., 123, 57 Law ed., 1101. The authorization was not such a vested right as was beyond the control of the Legislature. The State, having authorized the purchase, might revoke it.

The Legislature, in conferring that right in the first instance, used these words:

"Section 2. Said water district is hereby authorized and empowered to acquire by purchase the entire plant, property and franchises, rights and privileges now held by the Guilford Water Company within said district, including all lands, rights of way, waters, water rights, dams, reservoirs, standpipes, pipes, machinery, fixtures, hydrants, tools, and all apparatus and appliances owned by said Guilford Water Company and used or usable in supplying water in said district in accordance with the written contract entered into on the

tenth day of August, one thousand nine hundred and ten, by and between said Guilford Water Company and the inhabitants of the town of Guilford." 1911 P. & S. L., Chap. 201, *supra.*

The Section, as amended in 1929, reads:

"Sec. 2. Rights of Sangerville Water Company included. Said water district is hereby authorized and empowered to acquire by purchase the entire land, property and franchises, rights and privileges now held by the Guilford Water Company and the Sangerville Water Supply Company within said district, including all lands, rights of way, waters, water rights, dams, reservoirs, standpipes, pipes, machinery, fixtures, hydrants, tools and all apparatus and appliances owned by said Guilford Water Company and of said Sangerville Water Supply Company used or usable in supplying water in said district." 1929 P. & S. L., Chap. 81, *supra.*

When a statute is revised, and a provision contained in it is omitted, the inference to be drawn from such a course of legislation is that a change in the law was intended to be made. *Denver Water Company Case,* supra; *Buck* v. *Spofford,* 31 Me., 34, 36; *Knight* v. *Aroostook Railroad,* 67 Me., 291. The omitted provision is not to be revived by construction. *Pingree* v. *Snell,* 42 Me., 53.

The legislation on which the plaintiff relies having been repealed, the bill in the case of the Guilford Water Company is defeated.

*Both bills dismissed.*