[No. 27344. *En Banc.* October 14, 1938.]

THE STATE OF WASHINGTON, *on the Relation of William R. Bell, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY *et al.,* *Respondents.*[1]

*Meier & Meagher* and *Wm. R. Bell,* for relator.

*B. Gray Warner* and *F. M. Reischling,* for respondents.

MAIN, J.—William R. Bell, as relator, brought an action in the superior court of King county to require the canvassing board of election returns of that county

[1] Reported in 83 P. (2d) 246.

to certify to the county auditor his name as one of the nominees for the office of justice of the peace. The result of that action was a judgment of dismissal, and that judgment is now here for review.

In Seattle precinct, five justices of the peace are to be elected at the general election to be held November 8, 1938. At the primary election held September 13, 1938, there were fifteen candidates for the office of justice of the peace in Seattle precinct. The canvassing board certified to the county auditor the names of the four receiving more than a majority of the votes cast, according to the legislative-defined majority, and also the names of the two candidates who received the fifth and sixth highest number of votes at the primary election. The board refused to certify the name of the relator, who received the eighth highest vote.

The general question is whether the relator has a right to have his name printed on the general election ballot as a candidate for the office of justice of the peace, and this depends upon the construction to be placed upon § 1 of chapter 85, Laws of 1933, p. 385, which, in so far as material, reads as follows:

"When there are to be elected at any general election one or more justices of the peace of any county or precinct therein, the candidates for each respective office whose names are to be placed on the general election ballot shall be determined as follows: Not less than ten days before the time for filing declarations of candidacy, the county auditor of the county in which such election is to be held, shall designate the positions to be filled in the respective judicial precincts within the county. The number of candidates equalling the number of judicial positions to be filled who receive the highest number of votes at the primary election and an equal number of candidates for such positions, providing there are such candidates, who receive the next highest number of votes, shall be the candidates for such respective offices and their names

shall appear on the general election ballot under the designation of such respective offices: *Provided, however,* That where any candidate for any such office shall receive a majority of all votes cast at such primary election for such office, the name or names of such candidates receiving such majority shall be printed separately, under the designation 'Vote for ...........................................................,' and the name or names of no opposing candidate or candidates shall be printed on such ballot in opposition to such candidate or candidates, but spaces equalling the number of such majority candidates shall be left following such name or names, in which the voter may insert the name of any person for whom he wishes to cast his ballot. The proper certifying officer, in certifying to the several county auditors of the state the names of candidates nominated for the offices of justice of the peace, shall specify the names of those who have received a majority of all votes cast at such primary election. For the purpose of determining whether any candidate or candidates shall have received a majority of all votes cast under the provisions of this section, the number of votes cast shall be determined by adding together the number of votes cast for each candidate and dividing the sum of votes by the number of positions to be filled and any candidate who receives a number of votes in excess of one-half of the votes cast as thus determined shall be deemed to have received a majority of all votes cast. If it shall appear that a number of candidates in excess of the number of positions to be filled shall have received a majority of all votes cast, then there shall be printed upon the ballot only the names of the candidates who received the highest number of votes and equal to the number of places to be filled. . . ." Rem. Rev. Stat. (Sup.), § 5213-1 [P. C. § 2259-1].

It will be observed that this statute provides a method of determining whether any candidate or candidates shall have received a majority of all the votes cast under the provisions of the section.

▮ The right of the legislature to define what

shall constitute a majority at a primary election was sustained in the case of *State ex rel. Onstine v. Bartlett,* 131 Wash. 546, 230 Pac. 636. While the exact situation here presented was not present in that case, the underlying principle is the same, and we regard that case as controlling upon the question of the power of the legislature to define what shall constitute a majority. This answers the relator's first contention to the effect that the legislative-defined majority is unconstitutional.

We now come to what we regard as the principal question in the case, and that is whether the relator, having received the eighth highest vote, was entitled to have his name go on the general election ballot as a candidate for justice of the peace.

Looking at the statute, it will be observed, in the declaratory part thereof, that:

"The number of candidates equalling the number of judicial positions to be filled who receive the highest number of votes at the primary election and an equal number of candidates for such positions, providing there are such candidates, who receive the next highest number of votes, shall be the candidates for such respective offices and their names shall appear on the general election ballot under the designation of such respective offices: . . ."

Here is an express declaration that twice the number of candidates shall be nominated as there are positions to be filled. Applying that statute to this case under the declaration, it would mean that the names of the ten who receive the highest number of votes at the primary election would go on the general election ballot. Following this broad declaration, there is a proviso to the effect that, if any candidate or candidates shall receive a majority of the votes cast at the primary election, then such candidate's or candidates' names shall go on the election ballot unopposed.

There is also in the proviso a statement to the effect that, if it shall appear that the number of candidates, in excess of the number of positions to be filled, shall receive a majority of the votes cast, then there shall appear on the ballot only the names of the candidates who received the highest number of votes equal to the number of places to be filled. There is no provision in the statute covering the situation where there are a number of places to be filled and one or more receive a majority of the votes cast at the primary election but the number receiving a majority do not equal the number of places to be filled.

In this case, as already stated, four candidates received the majority, and, for the fifth place, none of the candidates received a majority. This being true, and the statute nowhere qualifying the general declaration that the number of candidates shall be twice the number of positions to be filled, if there are that number seeking the places, it necessarily follows that all ten names are to be printed upon the general election ballot, four being printed as the statute provides for unopposed candidates, and the other six being candidates for the fifth position.

■ This statute is substantially the same as § 1 of chapter 85 of the Laws of 1919, p. 199, which covered the matter of the nomination of judges of the supreme and superior courts, except in one important particular. That statute contained this provision:

"Following the names of such majority candidates, under the designation 'Vote for............................' the names of the minority candidates who have received the highest number of votes at the primary election equal to twice the number of the remaining places to be filled shall be printed:  . . ."

Had that provision been embodied in the 1933 act, it would have covered the exact situation here, and, for

the fifth place, the two receiving the highest number of votes, aside from those whose names went on the ballot unopposed, having received a majority, would be the only ones whose names would go on the general election ballot. When the legislature omitted the provision just quoted from the 1933 act, it indicated a change in legislative purpose. *Whittlesey v. Seattle,* 94 Wash. 645, 163 Pac. 193, L. R. A. 1917D, 1084; *In re Phillips' Estate,* 193 Wash. 194, 74 P. (2d) 1015.

It follows, as already indicated, that the relator has a right to have his name certified by the election canvassing board as a candidate for justice of the peace and to have his name printed upon the general election ballot as such.

The judgment will be reversed, and the cause remanded with direction to enter a judgment as herein indicated. Let the remittitur go down forthwith.

STEINERT, C. J., BEALS, MILLARD, BLAKE, GERAGHTY, ROBINSON, and SIMPSON, JJ., concur.