[No. 28966. *En Banc.* July 30, 1943.]

EDWARD H. ALEXANDER, *as Administrator, Appellant,* v. HATTIE TEMPLETON HIGHFILL, *as Executrix, Respondent.*[1]

[1] Reported in 140 P. (2d) 277.

*D. W. Zent,* for appellant.

*Bonsted & Nichoson,* for respondent.

SIMPSON, C. J.—In March, 1941, plaintiff instituted this action against J. A. Ferguson, claiming a debt due on a contract. Summons and complaint were served on defendant, November 6, 1941. Mr. Ferguson died, December 4th of that year. His will was admitted to probate and Hattie Templeton Highfill appointed executrix, December 12, 1941. She qualified as such and notice to creditors was duly published, commencing December 18, 1941. Within ninety days after the first publication of notice to creditors, plaintiff presented a motion to have the executrix of the John A. Ferguson estate substituted as defendant in this action. August 11, 1942, an order was entered, substituting the executrix as defendant.

At the hearing upon the motion, the executrix appeared specially and objected to the granting of the motion for substitution on the ground that no claim had been filed with the executrix as called for in the notice to creditors. Subsequent to the service of the motion for substitution, plaintiff served and filed an amended complaint, and, a few days thereafter, the executrix filed an answer in which she, preserving her special appearance, admitted certain payments as alleged in the complaint, denied generally all other allegations, and set up the affirmative defense that no claim had been filed as required by the notice to creditors. Plaintiff replied, admitting the allegations of the affirmative defense, except an allegation that the plaintiff's claim was barred for failure to comply with the provisions of Rem. Rev. Stat., § 1484 [P. C. § 9835]. There-

after, Hattie Templeton Highfill moved for an order and judgment of dismissal on the pleadings, for the reason that the reply admitted the material allegations of the affirmative defense. The motions were heard September 22, 1942, and an order was entered on that date, granting defendant's motions. Judgment was thereupon entered, dismissing the action, from which order plaintiff has appealed, assigning error in granting the motions and in entering a judgment of dismissal.

The only question presented is whether, in an action which survives the death of the defendant, a claim must be filed as required in the notice to creditors, where suit is pending at the time of the death of the decedent.

Appellant claims that it is not necessary to file such a claim where a motion for substitution of the representative of the estate was made within ninety days after the date of the first publication of the notice to creditors. He argues that, by the probate code of 1917, the requirement that a claim must be filed in such instance was removed, and cites for authority the case of *Guaranty Trust Co. v. Scoon,* 144 Wash. 33, 256 Pac. 74.

Respondent, on the other hand, contends that the statute requires a claim to be filed in the estate, and cites for her authority the case of *Roche v. McDonald,* 158 Wash. 446, 291 Pac. 476.

Because it was the last statement concerning this rule, the court, with good reason, followed the rule laid down in the *Roche* case.

The case under consideration involves an interpretation of Rem. Rev. Stat., § 1477 [P. C. § 9828], which provides for publication of notice to creditors by the executor or administrator; Rem. Rev. Stat., § 1484, which says that no holder of any claim against an estate shall maintain an action thereon unless the claim shall have been first presented as provided in § 1477; and Rem. Rev. Stat., § 1486 [P. C. § 9837], which reads as follows:

"If any action be pending against the testator or intestate at the time of his death, the plaintiff shall within ninety days after first publication of notice to creditors serve on the executor or administrator a motion to have such executor or administrator, as such, substituted as defendant in such action, and, upon the hearing of such motion, such executor or administrator shall be so substituted, unless, at or prior to such hearing, the claim of plaintiff, together with costs, be allowed by the executor or administrator and the court. After the substitution of such executor or administrator, the court shall proceed to hear and determine the action as in other civil cases."

The case of *Guaranty Trust Co. v. Scoon, supra,* involved a claim for unpaid stock subscriptions against several stockholders of an insolvent corporation. The case had been before this court on a previous occasion, when the amounts assessed were substantially reduced. It was argued on the appeal that no judgment should have been rendered against the estate of R. H. Wilkinson, one of the defendants, because no claim was filed in his estate. In passing upon that question, this court said:

"The record shows he was an original party defendant when the present action was commenced and was served with summons and complaint and appeared in the action. Thereafter he died and the duly appointed executrix of his estate was substituted for him, and personally as such executrix was served with a summons and complaint in the action. Thereafter, upon stipulation of the parties approved by the probate department of the superior court, the case proceeded against her as such executrix. There was no error in the judgment simply because a formal verified claim was not presented to the executrix. The estate had its day in court."

Without referring to this case, this court subsequently rendered a decision in the *Roche* case which appears to be, so far as this question is concerned, contrary to the holding just quoted. The *Roche* case involved a complicated set of facts. The plaintiff assignor

secured a judgment against the McDonalds in the superior court in an action involving a stock transaction. The wife appealed from the separate judgment against her and prevailed in this court. The judgment creditor then assigned the judgment to Roche, who sued McDonald in Oregon, where he was sojourning at the time, and obtained a judgment in that state. McDonald returned to this state, and Roche instituted an action against him based on the Oregon judgment, in which action McDonald prevailed in the trial court and on appeal. However, the United States supreme court reversed the judgment, and when the case was finally returned to the trial court, McDonald amended his answer and set up new and additional defenses. He died before issue was joined. Roche then filed a claim in the estate which was based on the Oregon judgment. The claim was rejected, and he then instituted another action which ignored the one then pending on the Oregon judgment. Various defenses were interposed, and Roche prevailed in the trial court. On appeal the executrix contended, among other grounds for reversal, that an independent claim could not be presented in the probate proceedings, and, upon rejection, another action instituted; that the plaintiff was required by the statutory provision to proceed in the original action pending at the time of the death of McDonald by substituting the executrix as defendant. In passing upon the question just mentioned, the court referred to Rem. Rev. Stat., § 1484, and stated:

"It is the argument of the executrix that this statute provides an exclusive remedy in situations such as is here presented; that the remedy of the common law is abolished, and that now a claimant whose claim is in suit at the time of the death of the defendant may not present his claim to the defendant's executor and sue upon the claim, if rejected, in an independent action, but must, in such a case, substitute the executor as defendant in the pending cause, and continue its prosecution in that action.

"But we are not able to follow the appellant. It is true that, at common law, the death of a sole defendant abated the action, and this whether the action was or was not founded on a liability which would survive the death. In the case of the death of the defendant pending the action, the plaintiff was required to begin anew against the personal representatives or successors in interest of the deceased defendant. He could not, under that procedure, substitute the representative or the successors in interest as parties defendant as defendants in the action. No doubt, the statute allowing a substitution was intended to relieve from the inconveniences and hardships that sometimes followed from the common law rule, but its counterpart is found in the English statutes, in the statutes of the United States, and in the statutes of every state of the Union, yet we are not advised that it has ever been held that it superseded the common law rule.

"It is true, furthermore, that the probate statute has added an element necessary to be pursued in order to maintain a certain class of action where substitution is permitted. Whatever the rule may be where the action against the defendant was merely to establish a right, such as to determine a disputed title to property, quiet the title to property, and the like, the statute, in all actions where a money judgment is sought against the defendant, makes it a condition precedent to the continuance of the action against the personal representatives of the defendant, that a claim be presented to his executor or administrator."

■ We are now of the opinion that the decision in the *Roche* case was incorrect in holding that, in case of an action pending, the plaintiff, upon the death of the defendant, must file a claim in the probate proceeding and start the action anew, and that the filing of a claim is a condition precedent to the continuation of the action.

The generally recognized rule is that, where the representative of a decedent's estate is substituted by order of court, the necessity of filing a claim is dispensed with, unless the statute specifically provides otherwise.

"The mere pendency of a suit against decedent at his death is not a presentation or exhibition of the claim within the meaning of the statute of nonclaim, nor does it dispense with the necessity of presentation, unless the statute so provides. But where plaintiff within the time limited for the presentation of claims obtains an order of revivor or making the administrator a party to such suit, this order is generally equivalent to, and dispenses with, the actual presentation of the claim, unless of course the statute requires a presentation of the claim under such circumstances. There must, however, be a revivor within the period limited by statute for presentation in order to prevent the claim becoming barred, and of course the action must have been on the specific claim, and not for another purpose. If plaintiff suffers a nonsuit after such revivor and institutes a new suit within a year, it is not necessary to exhibit the claim again to the administrator." 24 C. J., p. 321, § 940.

The following cases support this rule: *Pull v. Nagle*, 8 N. J. Misc. 653, 151 Atl. 385; *Dillard & Coffin Co. v. Woollard*, 124 Miss. 677, 87 So. 148; *Henry v. W. T. Rawleigh Co.*, 152 Miss. 320, 120 So. 188; *Schilling v. Briggs & Masser*, 108 Fla. 351, 146 So. 559; *The Home v. Selling*, 91 Ore. 428, 179 Pac. 261, 21 A. L. R. 403, 409.

Prior to 1917 there was no question but that the law required the filing of a claim with the executor or administrator before a pending action could be prosecuted. The statutes, after providing for publication of notice to creditors and the form of claims to be presented, provided for allowance or rejection and for the institution of actions after claim had been duly presented. Referring to actions pending at the death of the defendant, the statute provided:

"If any action be pending against the testator or intestate at the time of his death, the plaintiff shall, in like manner, present his claim to the executor or administrator for allowance or rejection, authenticated as in other cases; and no recovery shall be had in the action, unless proof be made of the presentment." Rem. & Bal. Code, § 1481.

The probate code was revised by Chapter 156, Laws of 1917, p. 642 (Rem. Rev. Stat., § 1371 [P. C. § 9929] *et seq.*). After providing for publication of notice to creditors and requiring all claims to be served on the executor or administrator and filed with the court within six months after the first publication of notice to creditors, we find in § 116 of that act, now Rem. Rev. Stat., § 1486, the provision regarding substitution of the executor or administrator in pending actions. It will be noted that the specific provision of the prior law requiring such a claim to be filed with the administrator or executor was eliminated.

▆▆▆▆ It is a rule of statutory construction that, where the language of an amended or revised statute is clear, the prior act may not be referred to to create an ambiguity, and the courts cannot add anything to a statute, even though it may appear to have been unintentionally left out by the legislature (*State ex rel. Ewing v. Reeves,* 15 Wn. (2d) 75, 129 P. (2d) 805); and that, where a law is amended or revised and a material change is made in the wording or an important part eliminated, it is presumed that the legislature intended a change in the law.

It is true that the use of different language in either the case of an amendment or revision does not necessarily lead to the conclusion that the legal effect of the law has been changed thereby. Mere change in phraseology made, apparently, to express the provisions of the law more concisely or clearly will not be deemed a change in substance. We sometimes find in the texts and decisions a distinction made between amendment and revision. This distinction is generally expressed to the effect that a change in wording in an amendment will not be assumed to have been made without design, while a mere change in the words found in a revision will not be deemed to have embodied a change in the law unless it appears that such was the intention. 2 Lewis' Sutherland, Statutory

Construction (2d ed.), § 401; Crawford, Statutory Construction, p. 191, § 132; 59 C. J., p. 894, § 493; p. 1098, § 647.

However, in the application of the rule, we see very little difference in the two situations. If the change in wording is material in either instance, the court assumes a change in the law was intended. It is well to bear in mind that a revision in the law is itself a change in the law. As was said in *Becker v. Green County,* 176 Wis. 120, 184 N. W. 715, 186 N. W. 584:

"A revision of the statutes is something more than a restatement of the substance thereof in different language.

" 'Revision of statutes implies a re-examination of them. The word is applied to a restatement of the law in a corrected or improved form. The restatement may be with or without material change. A revision is intended to take the place of the law as previously formulated. By adopting it the legislature say the same thing, in effect, as when a particular section is amended by the words "so as to read as follows." The revision is a substitute. It displaces and repeals the former law as it stood relating to the subjects within its purview. . . . The purport of the numerous cases cited . . . is that where a statute is revised, or a series of acts on the same subject are revised and consolidated into one, all parts and provisions of the former act or acts that are omitted from the revised act are repealed.' 1 Sutherland, Stat. Constr. (Lewis' ed.) §§ 269, 270; *Pratt Institute v. New York,* 183 N. Y. 151, 75 N. E. 1119."

With reference to a change of language in a revised statute, we find the rule well expressed in 25 R. C. L., p. 1050, § 276:

"In the case of a general revision or codification of statutes it is well settled that a mere change of phraseology or the omission or addition of words will not necessarily change the operation or construction of former statutes, for the new language may be attributed to a desire to condense and simplify the law. The language of the statute as revised or the legislative intent to change the former statute must be clear be-

fore it can be pronounced that there is a change of such statute in construction and operation. Where, however, the intention of the legislature to change the law is too apparent to admit of any doubt, it must be followed. A change in the phraseology of an amendatory statute raises a presumption that a departure from the old law was intended. The legislature must be presumed to know both the language employed in the former acts and the judicial construction placed upon them; and if in a subsequent statute on the same subject it uses different language in the same connection, the courts must presume that a change of the law was intended, and after a consideration of the spirit and letter of the statute will give effect to its terms according to their proper significance. So the omission of a word in the amendment or re-enactment of a statute will be assumed to have been intentional. Where it is apparent that substantive portions of a statute have been omitted and repealed by the process of revision and re-enactment, courts have no express or implied authority to supply the omissions that are material and substantive and not merely clerical and inconsequential, for that would in effect be the enactment of substantive law."

In the case of *Wright v. Closson,* 29 N. M. 546, 224 Pac. 483, the old law regarding election of city aldermen read, "The qualified electors of each ward in cities shall annually [elect] . . ." and the later law read, "The qualified electors of cities shall . . . elect one alderman from each ward." The court held this change in phraseology clearly indicated an intent to change the law, saying:

"That the Legislature intended to make a change by the use of different language found in the act of 1903, now section 3587, Code 1915, must be presumed. The use of different phraseology, which is subject to a different interpretation, raises this presumption. It must be presumed that the Legislature intended to depart from the old law, which, in this instance, clearly and plainly required the election of aldermen by the qualified voters in their respective wards. If no change was intended or desired by the Legislature, why did it depart from the phraseology found in the former law

which clearly provided for their election in such manner? A Legislature is presumed to know the language used in former legislation, as well as the construction placed thereon, and, when a subsequent act embodies different phraseology from that found in the former act, courts must presume that a departure from the old law was intended. A change of language in a material respect is always held to show an intent on the part of the Legislature to change the meaning of the law. This is particularly true where the change in the form of expression is so marked as to indicate a desired change in the policy of the state."

In the case of *Dailey v. Pugh,* 83 Ind. App. 431, 131 N. E. 836, an old statute of descent and distribution provided that, if there were no grandparents surviving, the estate would go to the brothers and sisters of the father of intestate, "or if all the brothers and sisters be dead, then to their descendants." A later law eliminated this last clause. The court there said:

"We note, however, that in the Act of 1852, the provision contained in the last line of said subdivision two is wholly omitted. This we consider to be a significant fact, in determining the meaning the legislature intended should be given the particular provision we are now considering. It is well settled that where a statute is amended or re-enacted in different language, it will not be presumed that the difference between the two statutes was due to oversight or inadvertence on the part of the legislature; on the contrary, it will be presumed that the language was intentionally changed for the purpose of effecting a change in the law itself, unless it clearly appears to have been made for the purpose of expressing the original intention of the legislature more clearly. . . . An application of this rule in the instant case leads us to conclude that the omission of the last line in subdivision two of said § 112 of the Act of 1843 from § 5 of the Act of 1852, clearly evidences an intention on the part of the legislature to prevent the descendants of uncles and aunts from inheriting as a class where all such uncles and aunts are dead, as they had theretofore done, and to cast the inheritance on 'the next of kin, . . .' "

In *Ex parte Hoese,* 48 S. D. 337, 204 N. W. 174, the word "corporation" was left out in a clause restricting loans to individuals and partnerships, and the court held this indicated a legislative intent to change the law, saying:

"If the act of 1923 had been the original act on the subject, there would have been much more force in the contention made on the part of the state, but in considering the original section and the act of 1923 together we think any banker in this state would be justified in believing that after the latter act took effect he was permitted to make loans to corporations in excess of the 20 per cent limitation. Such would be the view that a person of ordinary understanding would reach upon comparing the two acts."

In *Saslow v. Previti,* 17 N. J. Misc. 29, 3 A. (2d) 811, the court held the omission of the words "persons or" in the revision of the death act giving administrators and executors an action for trespass to "person or property" of their decedent, changed the law to prevent a suit for medical care, even though the words were reincorporated in the law by a subsequent legislature.

In *Guilford & Sangerville Water Dist. v. Sangerville Water Supply Co.,* 130 Me. 217, 154 Atl. 567, the original statute authorizing the forming of a water district permitted the purchase of the water company "in accordance with the written contract" between the water company and the inhabitants. The revised law left out this last clause. The court said:

"When a statute is revised, and a provision contained in it is omitted, the inference to be drawn from such a course of legislation is that a change in the law was intended to be made. . . . The omitted provision is not to be revived by construction."

Accord: *Wine v. Massachusetts,* 301 Mass. 451, 17 N. E. (2d) 545, 120 A. L. R. 889, 895.

This rule of statutory construction has been followed in this state. With reference to the act of 1917, this

court, in considering another aspect of it, held that the elimination of the word "descendants" indicated an intent to change the law.

In *In re Eichler's Estate,* 102 Wash. 497, 173 Pac. 435, in considering the provision allowing attorney's fees, it was said:

"To measure the present law we must consider the old law, for a presumption carries in all changes in statute law that the legislature had in mind a mischief (a mischief of various rules, 40 Cyc. 1362), and a remedy, and we must attribute a motive for the striking out of the arbitrary provisions of the old law and a substitution of a discretionary power to award costs and attorney's fees unhampered by any restrictions within the realm of reasonable discretion."

In the case of *In re Phillips' Estate,* 193 Wash. 194, 74 P. (2d) 1015, we had before us for a consideration § 223 of the act. That section left out the word "descendants" which had been included in the old act. In passing upon the question, we stated:

"Resort to repealed and superseded statutes, *in pari materia,* may be had, and is of great importance, in the construction of statutes which reenact, with certain changes, or repeal former statutes, or which contain revisions or codifications of earlier laws. . . .

"When it is considered that the legislature meticulously designated 'descendants' throughout the entire Rem. & Bal. Code, § 1326, but left out that word in the effectual clause of the present statute, Rem. Rev. Stat., § 1402, although in the other two clauses of the latter section the word was retained, it must be taken that the legislature did so deliberately and to accomplish the very purpose that the change must naturally accomplish. From a material change in the wording of a statute, a change in legislative purpose must be presumed."

In interpreting other statutes, this court has universally followed the rule that a material alteration of the wording generally changes the meaning of the law. *Sandahl v. Department of Labor & Industries,* 170 Wash. 380, 16 P. (2d) 623; *State ex rel. Bell v. Superior*

*Court,* 196 Wash. 428, 83 P. (2d) 246; *State ex rel. Northwest Airlines v. Hoover,* 200 Wash. 277, 93 P. (2d) 346; *Great Northern R. Co. v. Cohn,* 3 Wn. (2d) 672, 101 P. (2d) 985.

■ That this court has assumed this interpretation of Rem. Rev. Stat., § 1486, is apparent not only from the wording of the *Guaranty Trust Co.* case, but also from the case of *Mohney v. Davis,* 102 Wash. 158, 172 Pac. 919, where we held the statutory provision to be mandatory and did not mention service of the claim on the executor, and in *Warner v. Benham,* 126 Wash. 393, 218 Pac. 260, 34 A. L. R. 1358, where this court, referring to the above section of the statute, says:

"Its sole purpose was to provide for the substitution of parties in actions which, by law, survive the death of one of the parties."

Relative to this question, we find the following in 3 Bancroft's Probate Practice, p. 1545, § 902:

"In a few states, presentation of a claim before reviving a pending action does not appear to be required in any case. Such is the implication, for example, of the North Dakota and Washington statutes."

By every intendment, the provision in question conveys a complete and definite meaning that, in an action pending at the death of the defendant, the executor or administrator may be substituted by order of the court without a formal claim having been filed in the probate proceedings.

The purpose of the statute requiring claims to be filed is merely to give the representative of the estate notice of the claim. *Crowe & Co. v. Adkinson Const. Co.,* 67 Wash. 420, 121 Pac. 841. The same purpose is accomplished by securing an order substituting the executor or the administrator for the party defendant. The change was made apparently by the legislature in order to simplify the procedure and to eliminate a useless act which had been specifically required by the statute prior to that time.

The case of *Roche v. McDonald, supra,* is overruled, in so far as it is contrary to this opinion.

The judgment of the trial court will be reversed, with instructions to proceed in accordance with the views expressed in this opinion.

ALL CONCUR.

[1]Reported in 140 P. (2d) 283.