[No. 15187.   Department One.   July 9, 1919.]

L. S. DART *et al.*, *Respondents*, v. MAUDE S. McDONALD, *Appellant*, D. K. McDONALD *et al.*, *Defendants.*[1]

CONSPIRACY (7) — TO DEFRAUD — EVIDENCE — SUFFICIENCY.   Under the rule that circumstances to establish a conspiracy to defraud must be inconsistent with a lawful purpose and that it is necessary to show that the person entered into an agreement with the other conspirators to accomplish the objects, a married woman's participation in the conspiracy of her husband and others, to defraud in obtaining subscriptions to valueless corporate stock, is not sufficiently established by evidence that, three or four years after the subscriptions were obtained, she did some business errands at the request of her husband relating to collections and was connected with a few subsequent transactions of like effect, and expressed an opinion that the subscribers would make considerable profit, it appearing that she took no part in the immediate transaction, and had only such knowledge as she derived from her husband.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered June 24, 1918, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for fraud.   Reversed.

*A. E. Gallagher* and *Graves, Kizer & Graves,* for appellant.

*F. W. Girand* and *Fred M. Williams,* for respondents.

[1]Reported in 182 Pac. 628.

MAIN, J.—The purpose of this action was to recover damages alleged to have been caused by a fraudulent conspiracy by which the plaintiffs were induced to purchase stock in a certain corporation.

After the issues were framed, the cause came on for trial before the court and a jury, and resulted in a verdict against four of the defendants, two of whom were D. K. McDonald and Maude S. McDonald, his wife.

Mrs. McDonald moved for judgment notwithstanding the verdict and for a new trial, which motions were overruled. Thereupon judgment was entered upon the verdict. The judgment was against each of the defendants, including Mr. and Mrs. McDonald, but no judgment was entered against them as a community. From this judgment, Mrs. McDonald alone appeals.

It will only be necessary to state the facts and review the evidence as bearing upon the question of whether Mrs. McDonald was a party to the conspiracy by which the respondents were defrauded.

During the spring of the year 1913, D. K. McDonald conceived the project of obtaining a contract for the purchase of two tracts of land, containing about 1,378 acres, near Palo Alto, in the state of California, and subdividing, improving and selling the same. As a part of this plan, a corporation, under the name of the Spokane-Stanford Land Company, was organized under the laws of the state of Washington, with a capital stock of $280,000, its shares having a par value of $100. Subscriptions to its stock were obtained on the representation that it owned or would own the California land, and that a large profit would be made by the subdivision and sale of the same. The respondents subscribed for one hundred shares of this stock and agreed to pay par value therefor.

Certain other subscribers to the stock, who, according to the contract of subscription, were to pay par value for the stock subscribed by them, were, by private arrangement with McDonald, to acquire the stock for less than $100 per share, its par value.

At the time the corporation was organized, McDonald had acquired an option on the California land, and had the contract made in the name of D. K. McKinnon. According to the option contract, the purchase price was $392,500. Shortly after the corporation was organized, it took over the option contract, agreeing to pay for the land the sum of $517,500. George E. Snyder cooperated with McDonald in securing subscriptions to the capital stock of the corporation. The enterprise was a failure. The land has been lost by the corporation, and the investing stockholders have realized nothing upon their investment and the money so invested has been a total loss. The parties against whom recovery is sought in this action were the stockholders who had subscribed and agreed to pay par value for the stock, but were, by private arrangement with McDonald, to pay less, D. K. McKinnon, the holder of the option contract, George E. Snyder, the solicitor for the sale of the capital stock, and Mr. and Mrs. McDonald.

The theory of the complaint was that the parties against whom recovery was sought had entered into a conspiracy to defraud, and, as a result thereof, a fraud was worked upon the respondents. As above indicated, the verdict and judgment were against the four last mentioned persons. No verdict or judgment was obtained against the stockholders who had subscribed agreeing to pay par value, but were, by private arrangement with McDonald, to pay less. Mrs. McDonald owned no stock in the corporation, had no part in its management, and had no knowledge of the

contents of its books. The question presented by this appeal is whether the evidence shows that she was a party to the conspiracy. The complaint upon which the action was tried is comprehensive in its allegations, but the trial court, in submitting the cause to the jury, withdrew from their consideration all charges of fraud, except two; first, the allegation that all subscribers to the stock were to pay par value therefor, when, in truth and in fact, certain of the subscribers were to pay a less sum; and second, the alleged representation that the lands were paid for and free from encumbrances. In other words, the cause was submitted to the jury to determine whether it had been represented to the respondents, at the time they subscribed for their stock, that all stockholders were paying par and that the land was paid for and free from encumbrances. It is not claimed that Mrs. McDonald had any part in the immediate transaction by which the respondents were induced to purchase the stock. If she is to be held, it must be because the evidence shows that she had entered into a fraudulent conspiracy with the other persons sought to be held in the action, to misrepresent in the two matters which were submitted to the jury.

Before Mrs. McDonald can be held liable it must be shown that she was a party to the conspiracy prior to the time the respondents subscribed for stock. It is unnecessary to cite authorities to the proposition that, before a party can be held liable as a conspirator, the evidence must show that such person entered into an agreement with the other conspirators to accomplish the object of the conspiracy. A further proposition, for which there is ample authority and which is the rule in this state, is that, where the facts and circumstances relied on to establish a conspiracy to defraud are as consistent with a lawful purpose as an unlawful

undertaking, they are insufficient. 12 Corpus Juris, 639; *Dunlap v. Seattle Nat. Bank,* 93 Wash. 568, 161 Pac. 364. The question then arises whether the facts and circumstances as shown by the evidence in this case are sufficient to sustain the verdict of the jury and the judgment against the appellant. If the evidence is sufficient, it is by reason of three or four transactions with which she was connected, all of which occurred long subsequent to the time when the respondents subscribed for their stock. Consideration will now be given to these transactions or circumstances.

D. M. Drumheller had originally subscribed for 250 shares of the stock. James Newlands, who was the bookkeeper for the Spokane-Stanford Land Company in its Spokane office, and was also bookkeeper for D. K. McDonald in his individual matters, testified that McDonald, while in California, wrote, asking that money be sent him. He further testified that Mrs. McDonald took the Drumheller certificate of stock for 250 shares and left the office with it. That he delivered the certificate to her on instructions from Mr. McDonald. In about half an hour she returned to the office and gave the certificate back to him, saying that she had been down to see Mr. Drumheller and had expected some payment, but that it was not made. This testimony is specifically denied by both Mrs. McDonald and Mr. Drumheller, but after the verdict of the jury, the version of the transaction as given by Newlands must be accepted as true.

Another transaction was that with A. M. Sommer, who, at the time the corporation was organized, had purchased thirty-five shares of the capital stock. About a year after that, he testified that Mrs. McDonald called him up on the telephone and told him

she wanted to see him the next time he came into town. Shortly thereafter he went to the office and Mrs. McDonald told him that Mr. McDonald had written to her and told her that he wanted the witness Sommer to take twenty shares more of the stock, which was said to be stock which had been subscribed for by someone in California who did not take it. After talking with Mrs. McDonald, Mr. Sommer agreed to take the twenty shares.

Another circumstance relied on is an alleged declaration of Mrs. McDonald, made in the office in the presence of Newlands, the bookkeeper, about the month of August, 1917, when an action was pending for the appointment of a receiver for the corporation. Three notes aggregating $100,000 were drawn up in the office at that time, signed by Mr. McDonald and given, or to be given, to McKinnon, who was the person in whose name the option was taken and one of the persons held guilty in this action as a party to the fraudulent conspiracy. The bookkeeper testified that, if he remembered rightly, Mrs. McDonald was present at this time and said something about it being just another lie and would not hurt much. This was approximately three and one-half years after the respondents had subscribed for their stock.

There was evidence that Mrs. McDonald had expressed an opinion, subsequent to the time the enterprise was started, to a number of persons who testified, to the effect that the stockholders would make a considerable profit upon their investment.

There is one further matter in the evidence which should be referred to, and that is that Mr. Sommer testified that, when he purchased the additional twenty shares of stock, Mrs. McDonald told him that it had been originally owned by a man in California

who had died, and that his estate could not, or for certain reasons would not, go on with the purchase. This testimony, even though denied by Mrs. McDonald, must be accepted as true.

The evidence offered to support the verdict and judgment against Mrs. McDonald in her separate and individual capacity is not of that clear and satisfactory character necessary to establish a conspiracy. Her part in the Drumheller and Sommer transactions was at the request of her husband. The fact that a wife may do a business errand for her husband would not tend to show that she had, at some prior time, entered into a conspiracy with him and others to defraud. She had no knowledge of the enterprise except such impressions as she may have received from Mr. McDonald. The declaration which the bookkeeper testified she made in August, 1917, when the receivership action was pending, does not necessarily show that she was a party, three or four years before, to a conspiracy by which respondents were defrauded. The reason she is said to have given in the Sommer transaction why the twenty shares of stock were for sale bears no relation to the charge of fraud upon which this action was submitted to the jury. It was not a representation as to the value of the stock, or that all stock subscribers were to pay full value therefor, or that the land was fully paid for and free from encumbrance. It was at most an untruthful statement as to the reason why the stock was for sale.

It is true that it is not necessary, in order to establish the fraudulent conspiracy, that it be shown by direct evidence. It may be established by facts and circumstances; but, as above stated, these facts and circumstances must be inconsistent with an honest purpose and reasonably consistent only with the intent to defraud.

In the respondents' brief we are invited to read the complaint for a description of the nature and character of the conspiracy, but the allegations of the complaint were denied, and we must therefore look to the evidence alone to determine whether the charges have been sustained.

The appellant's abstract purports only to set out the evidence by which it was sought to connect Mrs. McDonald with the conspiracy. The supplemental abstract of the respondents does not question the correctness of this abstract or set out any additional evidence which would tend to show that the appellant was a party to the conspiracy. All the evidence abstracted on this question has been carefully considered, and we are of the opinion that the judgment appealed from cannot be sustained.

The judgment, as to the appellant in her individual capacity, will be reversed.

MACKINTOSH, TOLMAN, and MITCHELL, JJ., concur.

HOLCOMB, C. J., took no part.