[Nos. 16146, 16144, 16145.  Department Two.  February 3, 1921.]

## L. S. DART et al., Appellants, v. D. K. McDONALD et al., Respondents.

## MAUDE S. McDONALD, Respondent, v. L. S. DART et al., Appellants.

## L. S. DART et al., Appellants, v. D. K. McDONALD et al., Respondents.[1]

HUSBAND AND WIFE (18, 20)—SEPARATE ESTATE—CONVEYANCES TO WIFE—PROCEEDS OF SEPARATE PROPERTY. Land conveyed by husband to wife is, as between them, her separate property, where they had purchased it with other property subject to mortgage, she agreed to pay a specified part of the mortgage, used her portion as her separate property and mortgaged it, using the proceeds to pay her assumed part of the prior mortgage.

SAME (58) — COMMUNITY PROPERTY — EVIDENCE AS TO CHARACTER. The husband's joining in a deed of the wife's separate property does not show that it was community property.

EXECUTION — SALE — EFFECT OF REVERSAL OF JUDGMENT. After reversal of a judgment under which there had been an execution sale of a house, the owner cannot recover, as rents and profits, the real estate agent's reasonable commission for collecting the rent.

COSTS (61)—ON APPEAL—SUCCESSFUL PARTY. A wife, appearing separately to defend her separate estate, is entitled to costs upon obtaining a reversal on her separate appeal prosecuted by her separate funds; and such costs cannot be offset against costs allowed in the original action.

Appeals by both parties from judgments of the superior court for Spokane county, Blake, J., entered

[1]Reported in 195 Pac. 253.

June 7, 1920, in related actions quieting title, granting restitution and decreeing an account, after a trial to the court on the merits. Affirmed.

*F. W. Girard* and *Fred W. Williams,* for appellants.

*Edwin C. Mathias* and *Graves, Kizer & Graves,* for respondents.

Mount, J.—These three cases are closely related. They were tried separately in the court below, but, by stipulation of the parties, are consolidated for argument here and are presented in one set of briefs. They all arise out of facts which may be briefly summarized as follows:

On June 24, 1918, L. S. Dart and others obtained a judgment against D. K. McDonald, Maude S. McDonald, his wife, and others. Mrs. McDonald appeared separately in that case and appealed from a judgment therein rendered against her. The judgment against her in her individual capacity was reversed. See *Dart v. McDonald,* 107 Wash. 537, 182 Pac. 628. Pending the appeal in that case, an execution was issued and levied upon two pieces of property which then stood in the name of Mrs. McDonald. One is known in the record as an orchard tract in Opportunity, in Spokane county, and the other is an apartment house known as Princeton apartments, in the city of Spokane. These properties were sold by the sheriff under the execution and bid in by Mr. Dart. Sheriff's deeds were issued and confirmed and Dart went into possession of the property.

After the judgment had been reversed upon appeal, Mrs. McDonald brought two actions; one, an action against the Darts to quiet title in her because of the sheriff's deed standing of record. This action resulted in a judgment quieting title in Mrs. McDonald.

15—114 Wash.

The Darts have appealed from this judgment. About the same time, Mrs. McDonald sued out a writ of restitution which came on to be heard and resulted in a judgment placing her in possession of the property and an accounting for rents, issues and profits in favor of Mrs. McDonald for $1,709.61. Mrs. McDonald has appealed from the order determining the rents, issues and profits, claiming that the court erred in not allowing her $294.02 paid by the Darts to an agent as commission for renting the apartments.

After judgments in all these cases, the Darts, by a proceeding in the lower court, attempted to offset the costs, amounting to some six hundred dollars in their favor in the original action, against a judgment for a like amount in favor of Mrs. McDonald upon her appeal in that action. The trial court denied the right to offset. The Darts have appealed from that order.

We shall consider these cases in the order in which they are above stated. The facts relating to the action to quiet title are substantially as follows: In the year 1911, Mr. and Mrs. McDonald, who were then husband and wife and had been such for a number of years, owned, jointly with one A. B. Clark and wife, a tract of land in Grant county comprising sixteen hundred and twenty acres. A mortgage upon this land had been executed by the owners for thirty-five thousand dollars in favor of the DeTweed Northwestern & Pacific Hypotheek Bank. In the same year (1911), Mr. and Mrs. McDonald and Mr. Clark agreed upon a partition of that tract of land. Three hundred and twenty acres of the tract was deeded to Mrs. McDonald as her separate property. She assumed and agreed to pay ten thousand dollars of the mortgage then existing upon the whole tract. D. K. McDonald in his separate right was given eight hun-

dred acres and he assumed and agreed to pay fifteen thousand dollars of the mortgage then upon the whole tract. A. B. Clark and wife were given five hundred acres and assumed and agreed to pay ten thousand dollars of the mortgage then upon the whole tract. Immediately after this division of the property among the parties, Mrs. McDonald took actual possession of the three hundred and twenty acres deeded to her as her separate property and operated it thereafter as her own separate property without the intervention of her husband. Mr. McDonald at that time, according to the undisputed testimony, was worth, over and above his unsecured debts, two hundred thousand dollars or more. This transaction took place two years or more before the transaction arose upon which the judgment of Dart *et al.* against McDonald *et al.*, reported in *Dart v. McDonald, supra,* was instituted, and apparently before McDonald had thought of the business which gave rise to that action.

In the year 1916, Mrs. McDonald borrowed from the Vermont Loan & Trust Company ten thousand five hundred dollars and secured the same by a mortgage upon her separate property. Mr. McDonald at the same time borrowed twenty thousand dollars from the Vermont Loan & Trust Company and secured the same by a mortgage upon the eight hundred acres of his property. Twenty-five thousand dollars of this money was used to satisfy the mortgage held by the DeTweed Northwestern & Pacific Hypotheek Bank. The mortgage of that company was then released upon the property of Mrs. McDonald and D. K. McDonald. Afterwards, Mrs. McDonald exchanged her three hundred and twenty acres of land subject to the mortgage of ten thousand five hundred dollars to one L. Williams for the apartment house in Spokane. Mr. Williams accepted the three hundred and twenty

acres of land subject to the ten thousand five hundred dollar mortgage. Mrs. McDonald took the apartment house subject to a mortgage of fifteen thousand dollars, which she assumed and agreed to pay. After Mrs. McDonald had taken possession of the apartment house which she had obtained for her farm land, Mr. McDonald executed a quitclaim deed reciting that the property was the separate property of Mrs. McDonald. Mrs. McDonald, from the time she received the farm land in 1911, up until she was dispossessed of the apartment house under the sheriff's sale, had operated both the farm while she owned it and the apartment house as her separate and individual property.

We have carefully read the whole of the evidence upon the trial and it conclusively shows that this property is the separate property of Mrs. McDonald. In fact, there was no evidence offered to the contrary. The appellants here seek to charge the property as community property, claiming that the original judgment in *Dart v. McDonald*, 107 Wash. 537, 182 Pac. 628, is a community judgment and that this property is liable for the payment of that judgment. Their contention is based, if we understand their argument correctly, upon the theory that, when this tract of sixteen hundred and twenty acres in Grant county was purchased, it was purchased as community property, and the mortgage of thirty-five thousand dollars upon the property was a community obligation and that it continued a community obligation until it was finally paid. As between the mortgagors and the mortgagees, this no doubt was a community obligation and continued as such until it was paid; but, as between Mr. and Mrs. McDonald and all the world beside who were not creditors at that time, where no fraud was shown in the transaction (as none was shown here), the three hun-

dred and twenty acres deeded to her by her husband was separate property. It stood of record in her name as separate property. She used it and operated it as separate property in all her dealings with it. When she assumed the debt of ten thousand dollars, she assumed it in her separate right and all her separate property thereby became liable for that debt. That ten thousand dollars was afterward paid by Mr. Williams, who purchased the property from Mrs. McDonald. The property she acquired in its stead became her separate property beyond any question.

It seems to be argued by appellant that the proceeds of the ten thousand five hundred dollar mortgage which Mrs. McDonald placed on the mortgaged property was used to discharge a community obligation and therefore the property itself became community property. But, as we have seen above, this ten thousand five hundred dollars was borrowed by Mrs. McDonald, not for the purpose of putting it into the property itself, but was borrowed for the purpose of paying her separate obligation, namely, ten thousand dollars which she had assumed and agreed to pay. It is true the ten thousand dollars which she first assumed and agreed to pay, when the property was first deeded to her, was the community obligation; but when she acquired the property as her separate property, she, as a separate entity, assumed and agreed to pay that portion of the community debt as a part consideration for the deed from her husband to herself. This clearly made it a separate obligation of her own and the proceeds of the mortgage were not devoted to a community use, but were solely for the purpose of her individual use. In the case of *Graves v. Columbia Underwriters*, 93 Wash. 196, 160 Pac. 436, we said, at p. 199:

"We have held in the case of *Dobbins v. Dexter Horton & Co.*, 62 Wash. 423, 113 Pac. 1088, that the joinder

by a husband with his wife in a note and mortgage upon her separate property would not make the property nor the proceeds therefrom community property. While the presumption naturally arises that property acquired during the marital relation is community property, the presumption is a rebuttable one. *Weymouth v. Sawtelle*, 14 Wash. 32, 44 Pac. 109. In the present case, the facts indisputably show that the borrowed money was in no way devoted to a community use, but solely for the benefit of the separate property on which it was raised. The status of Mrs. Fife's separate property, having been fixed as such at the time of its acquisition, would remain so fixed unless changed by deed, due process of law, or by the working of some form of estoppel. *Katterhagen v. Meister*, 75 Wash. 112, 134 Pac. 673; *In re Deschamps' Estate*, 77 Wash. 514, 137 Pac. 1009; *Morse v. Johnson*, 88 Wash. 57, 152 Pac. 677.''

See, also, *In re Finn's Estate*, 106 Wash. 137, 179 Pac. 103.

Appellant also seems to argue that the fact that Mr. McDonald joined in the mortgage made the property community property. In the case of *Chapman v. Edwards*, 113 Wash. 224, 193 Pac. 712, this court said:

''It seems well settled by our decisions that the property, becoming the separate property of Mrs. Chapman by the giving of the conveyance made May 17, 1917, did not change its character as her separate property by the mere joining of her husband with her in the execution of these subsequent mortgages.''

*Volz v. Zang*, 113 Wash. 378, 194 Pac. 409, announces no definite rule than that above stated.

We are satisfied, upon the whole record, that the trial court properly found that the apartment house was and is the separate property of Mrs. McDonald. The appellants apparently make no contention that the orchard tract was not the separate property of Mrs. McDonald, and we are clearly of the opinion that

both tracts are her separate property, and that the execution sale was a cloud upon her title and the court properly quieted the title to both tracts in Mrs. McDonald.

It follows that judgment must be affirmed.

Upon the accounting for the rents, issues and profits, the trial court was evidently of the opinion that the $294.02 paid by Darts to a real estate agent as commissions for collecting rents of the apartment was properly paid by the Darts. The record shows that Mrs. McDonald, when she was conducting the property in her own name, employed agents for the purpose of collecting the rents and paid a commission therefor. We are of the opinion that the commission was a reasonable commission and was a part of the necessary expenses for conducting the apartment house, and that the court properly refused to allow this sum to Mrs. McDonald.

The judgment upon that appeal must also be affirmed.

It is argued, upon the appeal from the order refusing to set off six hundred dollars costs in these proceedings against a like amount in the original proceeding, was error because the original appeal in *Dart v. McDonald* was financed by the community. The record here very plainly shows that Mrs. McDonald herself appeared in the original case independently of her husband and the other defendants, prosecuted the appeal in her own behalf by her own separate funds and obtained a reversal. She was clearly entitled to her costs in that case. These costs were not community costs, but were her own separate costs. The trial court therefore correctly refused to offset the costs in the original action against the judgment of Mrs. McDonald in this proceeding.

The judgment upon that appeal is also affirmed. The respondent, Mrs. McDonald, will recover her costs herein.

HOLCOMB, MITCHELL, MAIN, and TOLMAN, JJ., concur.