CAROLINE E. BURKE AND SEATTLE TITLE TRUST COMPANY, A CORPORATION, AS ADMINISTRATORS WITH THE WILL ANNEXED OF THE ESTATE OF THOMAS BURKE, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34821.   Promulgated February 24, 1931.

*William G. McLaren, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, for the respondent.

OPINION.

ARUNDELL: The principal issue is whether the income from the Empire Building property was the separate income of Thomas Burke or community income in whole or in part of Burke and his wife. Under the law of Washington rents, issues, and profits from

separate property of either of the spouses are the separate property of such spouse, *In re Brown's Estate*, 124 Wash. 273; 214 Pac. 10, hence it is necessary to determine whether the Empire Building property was separate or community property.

Clearly the land itself was the separate property of Burke. "The status of property is to be determined as of the date of its acquisition." *In re Brown's Estate, supra.* The land was acquired by Burke before his marriage. When he received $500 to apply on the purchase of the land from Mrs. Burke prior to their marriage, that money became his separate property. She was not then his wife and the money could not possibly bear any community stamp. Burke's testamentary description of the property as community property does not make it such. His statement is at best a conclusion of law and is not supported by the evidence. We are accordingly of the opinion that the land on which the Empire Building was erected was the separate property of the decedent.

The character of the land, however, does not necessarily establish that of the building. The courts of Washington recognize that land may belong to one of the spouses and the improvements may be community property. See *In re Carmack's Estate*, 133 Wash. 374; 233 Pac. 942. In that case Carmack in 1898, before his marriage, purchased a lot for $2,500 which in 1901 he deeded to his wife, whereupon it became her separate property. Thereafter a building was erected on the lot and after Carmack's death in 1922 the property was worth about $50,000. Among the pertinent findings in that case are these:

[The] improvements were made with either the separate funds of Mr. Carmack or with community funds; that it was mortgaged, each member of the community executing the note and mortgage; that it was managed by Mr. Carmack as community property, and that all taxes, assessments, repairs, and general charges were paid either from his separate funds or from the community funds.

Upon these facts, after finding that the land was the separate property of Mrs. Carmack, the Court held:

But the community money and efforts greatly increased its value. This situation would unquestionably give the community a large interest in, but not the entire ownership of, the property, because there can be a segregation of the community interest from the separate interest of Mrs. Carmack. The bare lot was hers, the improvements thereon belonged to the community. There is no testimony to show the value of the lot without the improvements. This testimony can of course be easily obtained. Assume that the bare lot would be worth at this time $10,000, and the lot and improvement worth $50,000, then Mrs. Carmack would have a separate interest in the property to the extent of one-fifth of its total value and the community would have a four-fifths interest.

Save for the fact that in this case we have the relative values of the land and improvements stipulated. the facts in the two cases are closely parallel. The respondent attempts to draw a distinction by saying that although the building was constructed from joint funds, the net rentals were more than sufficient to reimburse the community for the amounts advanced by it. The answer to this is, that as far as the record shows there was no actual reimbursement to the community. Property once established to be community property is presumed to continue as such. Its community character can not be destroyed as easily as suggested by the respondent. Cf. *Mary Brent, Executrix*, 6 B. T. A. 143. The evidence shows that after petitioner's marriage he made no separation between his separate income, if any, and that which upon its receipt immediately became community property. All of his receipts went into, and all payments were made out of one general fund. Where funds are so intermingled and confused it is the rule in Washington that they will be regarded as community property on the grounds of " the favor with which community property is regarded and the presumption in favor of it." *Jacobs* v. *Hoitt*, 119 Wash. 283; 205 Pac. 414. It is our conclusion that the Empire Building itself must be regarded as community property.

It is stipulated that at the time of erection of the Empire Building the land itself had a value not in excess of $210,000; that the building was constructed at a cost of $392,742, and that in 1924 and 1925 the land and building had the same proportionate values to each other as at the time of the erection of the building. We are of the opinion that the income from the Empire Building property in 1924 and 1925 should be determined on the basis of these stipulated figures. That is, $\frac{210,000}{602,742}$ of the income from the property is attributable to the land and will represent the separate income of Burke. The remainder is community income and is properly taxable one-half to each of the spouses. Cf. *Julius Shafer*, 2 B. T. A. 640.

Petitioners contend that we are bound by the decree of the probate court finding that all the property that came into the administrator's hands was community property. While it is the rule that descent and distribution are governed by State law (*De Vaughn* v. *Hutchinson*, 165 U. S. 566; *Randolph* v. *Craig*, 267 Fed. 993) and the Federal courts will ordinarily adopt and follow State decisions which establish rules of property (*Warburton* v. *White*, 176 U. S. 484) it does not follow that every decree of a State court is binding as establishing a rule of property. In this case we have examined the decisions of the courts of Washington and we find that the established rules

of property in that State are as we have set them out above. As far as we can determine from the evidence there was no contest in the probate court as to the nature of the property embraced in the estate, and upon representations to the court that it was community property there was no occasion for the court to inquire into the matter. Certainly not every consent decree entered by a State court can be said to establish a rule of property so as to preclude the Federal Government from showing the true facts in the collection of taxes. Moreover, the decree of the probate court deals with the status of the property only as of the date of death of the testator and does not purport to determine its nature during any period prior to that date. As we are concerned with the nature of the property during 1924 and the period of 1925 up to the date of Burke's death, we have a problem that is not affected by the decree of the court.

As set out above, we find from the decisions of the Washington courts that, as to the Empire Building property, the land itself was the separate property of Burke and the improvements were community property.

The respondent's claim, made by amended answer, that he erred in accepting separate returns for the period January 1 to December 4, 1925, is denied on authority of *Poe* v. *Seaborn*, 282 U. S. 101.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

TRAMMELL concurs in the result only.

MARQUETTE dissents.