ADDIE MALLOY, EXECUTRIX, ESTATE OF ANGUS P. MALLOY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43045.   Promulgated July 19, 1933.

*R. G. Wright, Esq.*, for the petitioner.
*Nathan Gammon, Esq.*, for the respondent.

718

OPINION.

SEAWELL: The petitioner bases her claim to immunity to the further income tax proposed by the Commissioner upon two grounds,

viz: (1) That the Malloy Apartment property was community property, one half belonging to her individually; and (2) that under the will of Augus P. Malloy his interest in said property immediately upon his death vested in the devisees, who were entitled, rather than the estate, to the profit arising from its sale. We will consider these propositions in their order.

1. *Was the Malloy Apartment community property?* Under the facts here present we must hold against petitioner on this proposition. Mr. and Mrs. Malloy went from Atlanta, Georgia, to Seattle, Washington, in July 1909. They had resided in Florida and Georgia since their marriage in 1899. At the time of their marriage, neither was possessed of any estate. Before they left Georgia, a considerable estate had been accumulated. The community property law did not obtain in Georgia or Florida, and of this fact we may take judicial notice, although we understand the fact to have been conceded at the hearing.

After arriving in Washington, Malloy invested in the land upon which the apartment was built and other lands also; but he never worked for or received a salary or bought or sold land for any other person. His only resources for his investments were his accumulations in Florida and Georgia before going to Washington. Mrs. Malloy was examined as a witness. She made no claim to any interest in the funds invested in the apartment lots or other property; it does not appear in the nine years of her executorship of the testator's estate that prior to 1926 she ever made claim that this apartment property was community property; title to the property was taken in Malloy's name, who paid all the purchase money for it, and the property was standing in his name at the time of his death. Joining her husband in the execution of a purchase-money mortgage on the lots did not show them to be or convert them into community property. *Dart* v. *McDonald*, 114 Wash. 448; 195 Pac. 253. It then appears that the claim that the property was community property is reduced to the bare presumption that the law raises, without any fact in evidence of a corroborative character. *Yesler* v. *Hockstettler*, 4 Wash. 349; 30 Pac. 398. But does the presumption relied on by petitioner arise in a case like this, where it affirmatively appears in the muniments of title to the very property in controversy that the husband at the time title passed to him was not domiciled in and not a citizen of the State of Washington? It is assumed to to be the law everywhere that the husband can and should select the marital home. In the bond for title and the deed his residence is stated then to be in the State of Georgia. The petitioner, however, urges upon our consideration the decision of the court in *Plath* v. *Mullins*, 87 Wash. 403; 151 Pac. 811. Upon examination

of the facts of the case, we do not consider it to be authority for the proposition that individual or separate property or funds when carried from a common law property state into a community property state become themselves community property, or if invested in such state the property so purchased becomes community property. In the case cited, land was purchased at North Yakima, Washington, by A. W. Burnett and conveyance taken in his name while he and his wife were residents of Montana. The controversy was mainly as to whose money paid for the land. Mrs. Burnett had made $4,400 in the restaurant business in Montana while he was away for 18 months in Alaska. The evidence was conflicting. When it was urged that Montana was not a community property state, the court said the laws of Montana were neither pleaded nor proved and the court would presume they were the same as those of Washington. Under this presumption the earnings of the husband and wife in Montana were held community earnings and the property purchased with such funds was itself community property. The requirement that the laws of other states must be pleaded and proved in state courts does not apply to Federal courts and as the jurisdiction of the Board of Tax Appeals is geographically coextensive with the Federal courts it is assumed that the Board, as well as the Federal courts, may and should take judicial notice of the laws of the various states. *Mo., Kans. & Tex. Ry.* v. *Wulf*, 226 U.S. 570.

In California it was held that property rights already acquired are not changed by a change of domicile. *Kraemer* v. *Kraemer*, 52 Cal. 302. In the State of Washington it is held that vested rights in property acquired in a foreign state or country by married persons there domiciled will not be divested by a change of domicile to a community property state, for the latter state will recognize and protect the rights of property of married persons acquired under the foreign laws. *Witherill* v. *Fraunfelter*, 46 Wash. 699; 91 Pac. 1086. In another case, *Brookman* v. *Durkee*, 46 Wash. 578; 90 Pac. 914, before the Supreme Court of Washington, the express question was involved. Eugene R. Durkee, domiciled with his wife Cynthia in the State of New York, used a portion of his own fortune to purchase real estate in Pierce County, Washington. Cynthia died and then her heirs claimed that the land was community property which they inherited from her. In deciding against their claim, the court said in part:

* * * personal property acquired by either husband or wife in a foreign jurisdiction, which is by law of the place where acquired the separate property of one or the other of the spouses, continues to be the separate property of that spouse when brought within this state; and, it being the separate property of that spouse owning and bringing it here, property in this state, whether real

or personal, received in exchange for it, or purchased by it, if it be money, is also the separate property of such spouse.

To the same effect are *Elliott* v. *Hawley*, 34 Wash. 585; 76 Pac. 93; *In re Brown's Estate*, 124 Wash. 273; 214 Pac. 10; and *Merrick* v. *Appenzeller*, 115 Wash. 181; 196 Pac. 629.

Petitioner also calls to our attention cases in Washington holding that separate funds mingled and confused with community funds may work a forfeiture of their character as separate and the whole become community funds. This doctrine is not presented here as Malloy used only his own funds in the purchase he made, so far as the evidence discloses. The services of Mrs. Malloy in assisting in renting out the apartments would partake of no such character and even if she had been possessed of funds and had expended them in the erection of the apartment building, it would not have changed the character of the property as the separate property of the decedent. See *Commissioner* v. *Burke*, 62 Fed. (2d) 7, which overruled the decision of the Board in 22 B.T.A. 337.

It therefore appears to us in the first place that Mr. and Mrs. Malloy were not residents of the State of Washington at the time the lots in question were purchased by him; but if they were, the lots were purchased with the individual funds of Malloy, which gave her no community interest in them.

2. *Are the profits from the sale of the Malloy Apartments taxable to the estate or the devisees?* This property was part of the property of the decedent and came into the hands of the petitioner by virtue of her office of executrix under the will of the testator. The estate had not been closed at the time of the sale of the apartments, but if the estate had been closed and the apartments were then being held by the trustee it would not seem to change the tax situation with which we are here concerned. The Revenue Act of 1926 provides:

SEC. 219. (a) The tax imposed by Parts I and II of this title shall apply to the income of estate or of any kind of property held in trust, including—

(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

\*          \*          \*          \*          \*          \*

(b) Except as otherwise provided in subdivisions (g) and (h) [not here pertinent], the tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, except that—[not here material].

Income to a fiduciary under this section of the law may be classified under three headings, viz:

(1) That which must be held and accumulated for future distribution, which includes that received by estates of deceased persons during the period of administration.

(2) That which must be distributed currently or periodically.

(3) That which the fiduciary is authorized by the instrument of his appointment, or in the case of a guardian of an infant, by order of the court, to either hold or distribute.

Under the further provisions of the statute, subsections (b) (1), (2) and (3), with reference to certain deductions allowed fiduciaries, the practical effect on taxation, broadly speaking, is: (1) That income which must be held and accumulated, including that received during the period of administration, is taxable to the fiduciary; (2) that which must be distributed is taxable to the beneficiary; and (3) that which may be distributed in the discretion of the fiduciary, is taxable to the fiduciary if not distributed, and taxable to the beneficiary if distributed. *Guitar Trust Estate*, 25 B.T.A. 1213.

The fiduciary in the case at bar was expressly directed to keep the estate intact and not to distribute it until the youngest child was 21 years of age. She had authority, in her discretion, to sell any or all of it and under this authority she made the sale of the Malloy Apartments in question. But even if she had discretion to make distribution, the discretion was not exercised, and the distribution was not made.

It seems the facts as disclosed in the evidence fit the case exactly into the provisions of the statute. The income was not distributed or distributable to any beneficiary; but under the terms of the will was accumulated and held for future distribution. No child had any present right to the estate or the income therefrom, or any part of either as a distributee or devisee; and the rights of the widow were not as a distributee or devisee of the estate, but only as the fiduciary named in the will and appointed to the office by the court.

Petitioner, however, in the brief insists that upon the death of Angus P. Malloy his wife and children, as the devisees of his will, were immediately invested with title to the Malloy Apartment property and on sale thereof the profits were theirs. This result is claimed under section 4640 of Ballenger's Annotated Code of Washington (Remington's Comp. Stats. 1366), wherein heirs and devisees are declared invested immediately upon the death of the ancestor or testator with lands of the deceased. This statute obviously has reference to lands of an intestate ancestor or to lands directly devised. In the proviso, partly quoted in the brief, the title and rights to possession, etc., by the heir or devisee are made expressly subject to the rights and powers of the executor or administrator. The construction of the statute contended for by petitioner would seem to deny to a testator in Washington the right or power to attach conditions or limitations to the disposition of his real estate by will. In the will of Angus P. Malloy, his estate, including the Malloy

Apartments, was devised to Addie Malloy *in trust* for the purposes therein named, which included power to lease, sell, exchange for other property and manage and dispose of it in any way the testator could have done, subject alone to the limitations contained in the will. It would seem to be contrary to the law to ignore the trust created. Remington's Compiled Statutes of Washington provides:

§ 1415. All courts and others concerned in the execution of last wills shall have due regard to the direction of the will, and the true intent and meaning of the testator, in all matters brought before them.

The same contention made by petitioner in this phase of the case before us was made by the devisees of J. M. Moore who died in 1901, in Washington State, leaving a will in which he devised to his daughter "the one-half of the proceeds of the lots when sold" of certain lands of the testator, and to his son in the same language the other half of said land, adding as to the son, "his share of said proceeds to be invested to make a fund for him when he becomes of age." The will was probated and the executor was appointed. The executor sold the land included in the devise to the daughter and the son, to a purchaser who brought an action in the courts of Washington to quiet his title, in which the daughter and son and the son's guardian and the mother of both children were made parties defendant. The defendants claimed that, under section 4640 of Ballenger's Annotated Code of Washington, title vested in said daughter and son immediately upon the testator's death, and the executor had no right to sell, and the sale made by him to the plaintiff was without authority of law and void. The trial court held against this contention of defendants and upon appeal the Supreme Court of Washington (*Martin* v. *Preston*, 49 Wash. 288; 94 Pac. 1087) affirmed the judgment of the lower court, saying:

\* \* \* The terms of the trust could not be carried out without the power to sell the land and to transfer the title thereto. The title, therefore, vested in the trustee for that purpose. It is established doctrine that "trustees take exactly that quantity of interest which the purposes of the trust require."

\* \* \* \* \* \* \*

\* \* \* The real estate did not descend to appellant as contended, but the title rested in the trustee until the purpose of the trust could be effectuated by the actual exchange of the land for money.

The last sentence in Regulations 69, article 343, is cited in petitioner's brief to sustain the contention here made. The excerpt cited is more or less meaningless when taken out of the context. A portion of that regulation, however, which is complete within itself and appropriate here, is as follows:

\* \* \* Where, however, the executor sells property of the estate for more than its value at the death of the decedent, the excess is income, or may be capital gain, taxable to the estate.

After careful consideration of all the authorities cited in the brief and at the hearing, and of all contentions made, we conclude that the profit on the sale of the Malloy Apartments and lots 23 and 24, under the existing circumstances, is taxable against the estate, and the respondent is sustained also on this point.

*Judgment will be entered for the respondent.*