[No. 26801. Department One. January 20, 1938.]

THE FEDERAL LAND BANK OF SPOKANE, *Appellant*, v. W. CLAYTON McMINIMEE *et al.*, *Respondents.*[1]

STEINERT, C. J., dissents.

*William Healy, Henry R. Newton,* and *Oscar L. Boose* (*Albert Olsen,* of counsel), for appellant.

*Clark & Grady,* for respondents.

MAIN, J.—This action was brought to set aside a deed to certain property issued by the treasurer of Yakima county to W. Clayton McMinimee pursuant to a sale of the property for delinquent irrigation district assessments. The defendants are W. Clayton McMinimee and Elizabeth McMinimee, his wife, and W. C. McMinimee and Alveda McMinimee, his wife.

The theory of the action is that the defendants W. Clayton McMinimee and W. C. McMinimee entered into a fraudulent conspiracy to deprive the plaintiff of its title to the property. The cause was tried to the

[1] Reported in 75 P. (2d) 138.

court without a jury, and resulted in findings of fact from which the court concluded that the charge made in the complaint had not been sustained. From the judgment dismissing the action, the plaintiff appeals.

The facts, as found by the trial court and which the evidence supports, may be summarized as follows: W. Clayton McMinimee (who will be referred to as Clayton) and his wife resided at Marlin, in Grant county, where Clayton was the principal of the public school. W. C. McMinimee and his wife resided upon a ranch near Outlook, in Yakima county, which was some distance from the county seat, the city of Yakima. Clayton was the son of W. C. McMinimee and wife.

April 21, 1924, W. C. McMinimee entered into a contract to purchase from the appellant, the Federal Land Bank of Spokane, certain land in Yakima county near where he was then residing. The contract provided for the making of certain payments on the purchase price from time to time, and that the total balance would become due and payable April 21, 1929. By the terms of the contract, the purchaser agreed to pay all water charges and operation and maintenance charges each year before the same became delinquent. The property was located within the limits of the Sunnyside Valley irrigation district, which annually levied thereon irrigation district assessments.

About the time the balance of the full purchase price became due, the purchaser being unable to pay same, negotiations were entered into between him and the appellant relative to the making of a new contract, but these arrangements do not appear to have been consummated. W. C. McMinimee continued in possession of the land, farmed the same, and made some payments from time to time.

The assessment which became delinquent and which resulted in the deed to Clayton after the sale was for

the year 1931. W. C. McMinimee paid the assessments prior to that year and for the subsequent two or three years, and he claims that the appellant had agreed to pay the assessments for that year, owing to his inability to do so. That assessment became delinquent in January, 1932, and on January 7, 1933, the property was sold at public sale by the treasurer of Yakima county in the manner and form prescribed by law, and it at no time thereafter was redeemed.

During the early part of January of that year, Clayton visited his parents at Outlook. He, previously, had been investing his surplus earnings from time to time in school warrants. His mother, being a school director of the district in which she and her husband lived, at times made such investments for him and had authority to draw upon his bank account at the place where he resided.

On the morning of January 7, 1933, Clayton and a younger brother, as he testifies, went to the city of Yakima for the purpose of looking into the matter of purchasing school warrants. When they went to the courthouse, Clayton met a county commissioner with whom he had been acquainted for many years, and, as he says, at the suggestion of the county commissioner, he concluded to invest in irrigation district delinquent assessments, on account of the interest rate being higher. At that time, a sale was being conducted by the county treasurer of property for such delinquent assessments. A list of the properties was posted in the treasurer's office.

After considering the matter, Clayton handed the treasurer, or one of his deputies, a list of the properties which he desired to purchase. This was written in lead pencil upon what is referred to as scratch paper. He purchased the certificates of a number of the properties, and they were subsequently delivered to him.

Some of them were redeemed prior to the time a deed would become due, and others were not. After the deed to two of the tracts of property had been issued and delivered to Clayton, he and his father then discovered that the property which his father had purchased from the appellant was one of those upon which he had paid the delinquent assessment for the year 1931 and for which one of the deeds had been issued. Thereafter, the present action was begun for the purpose above stated.

The appellant, in opening its argument in its brief, says that,

". . . as all the assignments of error are directed to the insufficiency of the evidence to justify the decision of the court, they will be argued together."

The question presented is one of fact. The appellant recognizes that the burden was upon it to establish the charge of fraudulent conspiracy made in its complaint by evidence which is clear and convincing. *Bond v. Werley*, 175 Wash. 659, 28 P. (2d) 318. The direct testimony offered upon the trial largely refutes the charge of fraudulent conspiracy on the part of Clayton and his father. It will be admitted that there are certain suspicious circumstances. Where, however, circumstances are relied upon to establish such a charge, those circumstances will be insufficient to establish a conspiracy to defraud, if they are as consistent with a lawful purpose as an unlawful one. *Dart v. McDonald*, 107 Wash. 537, 182 Pac. 628.

When the entire record, which is somewhat voluminous, is read and considered, three or four very material facts, found by the trial court and supported by the evidence, stand out. They are these: Clayton attended the sale and W. C. McMinimee did not. The money paid for the delinquent certificates was furnished by Clayton, and not by his father, and, in addi-

tion to this, neither Clayton nor his father knew that the latter's land had been included in the purchases until after the deed had been issued. As said, these facts were found by the trial court and, in our opinion, are sustained by the evidence. If they are the facts, they are very material and are not overcome by any or all of the circumstances to which reference has been made.

It is said, however, that the list handed in by Clayton at the time he made the purchases was in the handwriting of his father, and there is expert testimony to this effect, though the experts do not all agree. The appellant says that, if that exhibit "was written by W. C. McMinimee, the respondents' defense fails." But, in our opinion, that result would not necessarily follow.

The appellant invites us to consider the exhibit referred to, compare it with the admitted handwriting of Clayton and his father, and determine which of them did the writing. We have examined these writings, but are unable to say from such an examination that the particular exhibit was written by W. C. McMinimee, and not by Clayton.

To overturn the judgment of the trial court, it will be necessary for us to find that the principal witnesses for the respondents, and they were corroborated to some extent, testified falsely. The trial court, after seeing and hearing them testify, did not reach such a conclusion, and from the record, we cannot do so.

The judgment will be affirmed.

HOLCOMB, SIMPSON, and GERAGHTY, JJ., concur.

STEINERT, C. J. (dissenting)—Upon the facts disclosed by the record herein, I think that appellant should recover. I dissent.