[No. 28375. Department Two. January 9, 1942.]

E. C. QUACKENBUSH et al., *Appellants*, v. M. C. SLATE
et al., *Respondents*.[1]

[1]Reported in 121 P. (2d) 331.

*Brown & Huneke,* for appellants.

*John T. Raftis, Wentz & Bailey, F. Leo Grinstead,* and *William S. Risley,* for respondents.

SIMPSON, J.—Plaintiffs instituted this action to recover damages from defendants caused by the alleged conspiracy of defendants to fraudulently deprive plaintiffs of their interests in a mine.

The pertinent part of the complaint contains the following allegations. Defendants G. J. Vervaeke and Mary Vervaeke, his wife, February 5, 1938, gave to Neil E. Bayne an option to purchase their Deer Trail Mine for one hundred thousand dollars on deferred payment terms, and on the same day Bayne transferred the option to the Metals Development Company, Inc., which entered into immediate possession. Prior to October 27, 1938, plaintiff E. C. Quackenbush, as holder of the common stock of Metals Development Company, sold the option on the mine to T. E. Mc-Croskey, who, at that time, was acting for himself and defendant M. C. Slate.

January 30, 1939, G. J. Vervaeke, at the request of M. C. Slate, who had succeeded to the rights of T. E. McCroskey, entered into an additional agreement with the company by the terms of which the original option agreement was materially modified. Some time between March 30, 1939, and July 8, 1939, M. C. Slate, G. J. Vervaeke, and Bob Vervaeke entered into a conspiracy to defraud plaintiffs of certain sums due plaintiffs under the provisions of the existing contracts.

The conspiracy was alleged to be as follows: Defendant M. C. Slate, while in possession of the mine, induced G. J. Vervaeke to give notice of cancellation of the option contract agreements July 17, 1939. The defaults, if any, were the premeditated defaults of M. C. Slate, made as a mere sham to give color to

the attempted cancellation. July 11, 1939, M. C. Slate directed the smelter handling ore for the Deer Trail Mine to cease payments of all ore proceeds. Despite the claim of forfeiture, M. C. Slate continued to operate the mine and appropriated to himself the entire proceeds, amounting to five thousand dollars. Defendant Bob Vervaeke, to give color to the pretended forfeiture, had been placed in charge of the mine, but that he was a mere dummy for M. C. Slate. M. C. Slate was elected president of the Metals Development Company, but that the company was a mere *alter ego* for defendant Slate.

Defendant G. J. Vervaeke, for himself and as executor of the estate of his deceased wife, Bob Vervaeke, and M. C. Slate answered and denied the allegations of the complaint relative to the charge of conspiracy and fraud.

Orders of default were entered against the Metals Development Company and T. C. McCroskey.

The case, tried to the court, resulted in a judgment and decree dismissing plaintiffs' complaint. Plaintiffs have appealed.

The assignments of error are in refusing to admit a letter in evidence, in making certain findings of fact, in failing to find that respondents M. C. Slate and G. J. Vervaeke conspired to the injury of appellants, in making its conclusions of law, in entering judgment against appellants, and in denying appellants' motions for a new trial and the reopening of the case.

For convenience, we will refer to E. C. Quackenbush as appellant and to respondents G. J. Vervaeke and M. C. Slate as Vervaeke and Slate.

In order to properly consider the issues of this case, we deem it necessary to set out at some length the undisputed facts and some of the evidence produced by the parties to this action.

Vervaeke and his wife (now deceased), owners of mining property in Stevens county, Washington, entered February 5, 1938, into a contract for the sale of the mine on a deferred payment plan for one hundred thousand dollars to Neil E. Bayne. The same day, Bayne assigned the option to Metals Development Company, Inc., a corporation organized to take over the contract. A detailed escrow plan was devised for the sale of the capital stock for fifty thousand dollars. Having received a power of attorney from the company and the necessary proxies, appellant entered into three option contracts for the sale of the stock; all employed the escrow device. The first, with T. E. McCroskey, a mining promoter, appears to have been terminated when a similar agreement was made October 27, 1938, with M. C. Slate, an Oregon contractor. The escrow agreement provided that Slate was to make a down payment of twenty-five hundred dollars to the escrow holder, who would pay it to appellant when all of the stock had been placed in escrow. The stock, in turn, was to be released to McCroskey as a representative of Slate when the total sum of ten thousand dollars had been paid. This amount was to be derived from a five per cent royalty from the operation of the mine. The Quackenbush-Slate agreement was extended in a final contract March 30, 1939. After the escrow agreement October 27, 1938, appellant, Bayne, and McCroskey persuaded Vervaeke, January 30, 1939, to renew the option with the company. Thus, March 30, 1939, we have this situation: an option contract between Vervaeke and the company for the sale of the mine, and another separate and distinct option contract (the Quackenbush-Slate) between the stockholders, represented by appellant, and Slate for the sale of the company's stock. It is the termination

of these two option contracts which constitutes the subject matter of this litigation.

After the signing of the second Quackenbush-Slate option, the company commenced mining with McCroskey in charge and appellant assisting. Because of McCroskey's injury in April, 1939, and the departure of Quackenbush in May, 1939, Slate assumed the supervision until Vervaeke retook possession July 27, 1939. On Slate's arrival at the mine, he experienced great difficulty in discovering the company's officers. From April to December, 1939, no less than three persons asserted directly or indirectly his right to be president. The evidence on this point is in hopeless confusion.

Not having received his contract payments, Vervaeke visited Slate at the mine in June, 1939. Slate testified that he informed Vervaeke he did not know his exact status with the company; that the option with the stockholders did not require him to make payments, but that was the company's obligation under its contract. Being unable to receive any satisfaction from other company stockholders, Vervaeke gave notice of forfeiture of the option July 7, 1939. Since the notice did not permit a period of grace within which to remedy the defaults, a second notice was served July 17, 1939, allowing a ten day period. A final notice was served July 29, 1939. All notices were served not only upon the officers of the corporation, but also upon McCroskey, appellant, and Slate. In cancelling the option, Vervaeke stated, *inter alia,* the following defaults: a failure to make contract payments, to pay taxes, and to pay industrial insurance.

In reference to the termination of the Quackenbush-Slate stock purchase option, Slate, by letter July 11, 1939, directed the Bunker Hill Smelter to:

"Deduct for transportation as here to fore;

"Deduct 10% for Mr. G. J. Vervaeke as here to fore;

"*Do not* deduct 5% for E. C. Quackenbush;

"*Do not* send any amount to The Old National Bank at Spokane.

"You may pay the remainder to M. C. Slate as previously instructed."

The main question for our consideration is whether or not Vervaeke and Slate conspired to defraud and deprive appellants of their interest in the mine through the termination of the option contracts. Since this is a question of fact, we shall detail the evidence which each side proffered to sustain its contention. In weighing the facts, however, the following rules must be kept in mind.

■ Appellant must prove that Vervaeke and Slate combined, in furtherance of a preconceived plan, to unlawfully deprive the company's stockholders of their interest in the mine, and that overt acts were done in accordance with this plan to their damage. 15 C. J. S. 996-1000, § 1 to § 6; *Eyak River Packing Co. v. Huglen,* 143 Wash. 229, 255 Pac. 123, 257 Pac. 638, and *Kietz v. Gold Point Mines, Inc.,* 5 Wn. (2d) 224, 105 P. (2d) 71.

■ Furthermore, appellant must establish these elements by clear and convincing evidence. The evidence, moreover, will be insufficient if it discloses acts as consistent with a lawful purpose as an unlawful one. *Dart v. McDonald,* 107 Wash. 537, 182 Pac. 628.

Appellant's counsel opened the trial of the action with the statement that appellant

"  . . . and his associates were entitled to a certain percentage, five percent of the take of the mine, Mr. Slate and Mr. Vervaeke entered into some sort of fraudulent understanding, the purpose being to cancel out the original contract, thus effectively cancelling out Mr. Quackenbush, and enabling Mr. Slate

to go on on the basis of $100,000 instead of a basis of $150,000."

In proof of the alleged conspiracy, appellant calls attention to the following evidence introduced on the part of appellant. In April, 1939, Slate sent machinery to the mine, at which time appellant was in charge. In the latter part of April, 1939, Slate supervised the mine operations, paying some of the workers from his private bank account. Although Vervaeke took over the management August 1, 1939, and made some payment to the workers, Slate continued to supervise the work about the mine until the last of the year 1939.

Appellant places great emphasis on the next incident. Prior to the Vervaeke-Metals Development Company option, a fifty-five hundred dollar judgment was rendered against Vervaeke in litigation concerning a diesel engine which had been installed at the mine. June, 1939, opposing counsel threatened to enforce collection. Slate, subsequent to the Vervaeke forfeiture notice, paid fifteen hundred dollars upon the judgment. Thereafter Vervaeke repaid the money. Appellant contends, however, that this was not a repayment, but a "settlement under their [Vervaeke and Slate] plan to freeze out Quackenbush and the Metals [Development Company]."

Prior to leaving the mine in the fall of 1939, Slate was asked by some of the men if they could operate it themselves. Acceding to their request, Slate agreed that the profits should be divided ninety per cent to the workmen and ten per cent to himself. This agreement was approved by Vervaeke.

In explaining their actions, Vervaeke and Slate introduced evidence which disclosed the following facts: Vervaeke did not meet Slate until June, 1939, which was after he received the first payment under the option contract. In reference to the diesel engine, it

was shown that Vervaeke repaid Slate the amount advanced on the judgment. The reason for the advance was that Slate had a large investment in the mine, including fifteen thousand dollars worth of machinery, and that the diesel engine was indispensable to the continued operation of the mine. The company had no funds, and the operating costs of the mine were paid by Slate until Vervaeke resumed control. During the time that Slate was in charge, he sustained a loss.

When Vervaeke reacquired possession July 29, 1939, he commenced operations again August 1, 1939, with his son Bob Vervaeke, a graduate mining engineer, in charge. Vervaeke also raised wages, paid the industrial insurance, and assumed the complete financial responsibility. That Slate remained at the mine after Vervaeke took over, was explained by the fact that Slate had made arrangements to haul ore at seven dollars per ton. In January, 1940, Vervaeke again closed the mine. Thereafter, a number of the miners made an agreement with Vervaeke to operate the mine themselves, paying him a ten per cent royalty.

Reviewing the evidence in the light most favorable to appellant, we are unable to hold that Slate and Vervaeke conspired to injure appellant. It is contended that, since Slate was in charge of the mine from May to August, 1939, he was responsible for the forfeiture of the Vervaeke contract. This contention is without merit. In this case, the evidence failed to establish the elements of a conspiracy. A careful reading of the two option contracts discloses that the company and not Slate was obligated to discharge the duties imposed by the contracts. Since the evidence relative to the company's management is in hopeless conflict and confusion, we cannot say that Slate was responsible for the corporate acts of the company. Assuming that he was, however, appellant is not now in

position to attack Slate's conduct when he abandoned the company in May, 1939. Finally, it might be pointed out that a number of the defaults alleged in the forfeiture notice were present before Slate was compelled to assume control in May, 1939. Consequently, Vervaeke possessed sufficient grounds to terminate the option.

Furthermore, the actions of Slate and Vervaeke were entirely consistent with their desire to protect their individual interests. Not only did Vervaeke attempt to collect the payments by calling on those interested in the corporation before he served the forfeiture notices, but also he stated that he did not wish to cancel the option, and was and is willing at any time to reinstate the contract and allow those interested to complete the payments. Moreover, none of the stockholders, including appellant, tried to reinstate it. We conclude also that Slate was justified both in taking possession and operating the mine, and in directing the smelter to remit to him the proceeds from the ore shipments. He had a large investment, the preservation of which depended upon the mine's successful management. The stockholders and officers of the company had not seen fit to proceed with production. In fact, they had abandoned all efforts to operate the mine. That a loss was sustained during the period of Slate's supervision, cannot be attributed to a lack of good faith.

Appellant urges that the court erred in refusing to admit in evidence a letter from Virgil Crum, an attorney at Portland, Oregon, representing Slate, and directed to appellant's attorney, regarding the diesel engine payments.

The letter inquired as to whether the claim against Vervaeke was in the form of a lien or a personal judgment. It stated that Slate expected to continue the payments for Vervaeke. The court did not commit

reversible error in rejecting the offer of the letter in evidence, because it did not throw light upon the controversy and hence was of no particular benefit to appellant.

It is next contended that the trial court erred in refusing appellant's motion for a new trial and to reopen the case for the introduction of further testimony.

The motion was based upon several affidavits, which related to an agreement concerning the payment by Slate of the fifty-five hundred dollar judgment against Vervaeke and an action by the Standard Oil Company against Slate in which it sought to recover judgment for supplies furnished Slate in the operation of the mine between April 26, 1939, and January 8, 1940. A reading of the affidavits convinces us that the trial court did not abuse his discretion in denying the motion for a new trial.

Finally, appellant presents in this court a motion permitting him to file in the superior court a petition to set aside the judgment against him and permitting the court to act on it.

The motion is grounded upon the claim of newly discovered evidence occurring after the trial and the entry of the judgment. The affidavits filed in support of the motion were made by A. H. Stiles, L. E. Jesseph, Earl R. Smith, and L. H. Brown.

The Stiles affidavit states that Slate told affiant that he had his brother, Frank Slate, take over the claim of about $4,600 of the General Machinery Company of Spokane, which was secured by the machinery in the mill at the mine. Further, that Slate stated that Frank Slate had helped by buying the General Machinery Company mortgage on the Deer Trail machinery, and finally that the mill at the mine was opened and running on custom work for other mines during April and May, 1941.

The Jesseph affidavit states that the records in Stevens county showed a conditional sales contract whereby the General Machinery Company of Spokane sold, by conditional sales contract, a diesel motor to Vervaeke for the sum of $4,258.29.

The Smith affidavit shows that he was secretary-treasurer of the General Machinery Company of Spokane, and that January 4, 1940, his company sold on conditional sales contract a diesel motor and other mining machinery to Vervaeke for the sum of $4,258.29.

The Brown affidavit states that the affiant had a meeting with T. E. McCroskey, who said that if appellant would agree to dismiss the appeal, Slate would make a settlement by paying a substantial amount in cash, providing appellants would wait on the Deer Trail mining operation by Slate for the remainder.

Appellant contends that, by authority of *Haaga v. Saginaw Logging Co.*, 170 Wash. 93, 15 P. (2d) 655, he is entitled to have his motion granted.

We are unable to find anything in the affidavits which would justify the trial court in granting a motion for a new trial if this question was referred to it. The new matter contained in the affidavits has nothing to do with the alleged conspiracy and, if true, could not change the results of the trial.

This court, in any event, will not grant a motion of this kind unless we could uphold an order of the trial court granting the motion after the case had been remanded. *Morrow v. Morrow*, 179 Wash. 329, 37 P. (2d) 692; *Chadwick v. Ek*, 5 Wn. (2d) 554, 106 P. (2d) 104. The motion is denied.

Judgment affirmed.

ROBINSON, C. J., BEALS, BLAKE, and JEFFERS, JJ., concur.